THE STATE OF OHIO, APPELLEE, *v.* MADDEN, APPELLANT.

(No. CA83-02-012—Decided March 19, 1984.)

*Mr. James L. Flannery, Mr. Michael E. Powell* and *Ms. Joanne V. Hash,* for appellee.

*Messrs. Lawson & Sharts* and *Mr. John E. Sharts,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Warren County, Ohio.

On October 6, 1982, the Warren County Grand Jury indicted defendant-appellant, Isaac Madden, on four counts of rape in violation of R.C. 2907.02 (A)(3). The indictment stated that the violation set forth in count one occurred during a time span ranging from June 1, 1981, thru December 31, 1981. Counts two, three and four were alleged to have taken place sometime between June 1, 1981, and September 31 [*sic*], 1981. On November 10, 1982, counsel for appellant filed a request for a bill of particulars, asking the state to specify with particularity the times, places and persons involved in each offense listed in the indictment. In addition, appellant requested a description of the nature of the offenses charged and the nature of appellant's conduct relating to each offense.

The state filed its response to the bill of particulars on November 23, 1982. In regards to count one of the indictment, the response stated that appellant allegedly engaged in vaginal intercourse with Amy Sue League, appellant's eight-year-old granddaughter, such incident occurring in a gray house where the appellant resided. The response further stated that counts two and three of the indictment involve incidents of fellatio between appellant and his eleven-year-old son, David Matthew Madden. Count two was alleged to have occurred while appellant resided in the gray house and count three allegedly took place while appellant resided in a white house. Under count four of the indictment, appellant allegedly engaged in

anal intercourse with his son, David Matthew Madden, while appellant lived in the gray house. All of the incidents were alleged to have occurred during the respective time periods set forth in the original indictment.

A jury trial was held on January 24 and 25, 1983, during which appellant was found guilty of rape on counts one, two and three of the indictment in violation of R.C. 2907.02(A)(3). Count four of the indictment was voluntarily dismissed by the state at the close of the state's case. Appellant was duly sentenced by the trial judge and subsequently perfected this appeal, alleging the following assignments of error:

### First Assignment of Error

"Where the State, following timely pre-trial demands, has failed to narrowly define the dates of the alleged criminal misconduct, and has, at trial, amended the dates of the indictment, and has denied appellant access to potential character witnesses, the State has prejudicially denied appellant his rights to due process and a fair trial."

### Second Assignment of Error

"The state prejudiced appellant's rights to due process and a fair trial by the improper use of leading questions in the interrogation of the minor witnesses."

### Third Assignment of Error

"Appellant's conviction is not sustained by the weight of the evidence."

In the first assignment of error, appellant claims he was denied due process of law and a fair trial by the state's failure to narrowly define the dates of the crimes and to provide appellant with access to potential character witnesses. At trial appellant introduced evidence, consisting of rent records and receipts and the testimony of witnesses, in an attempt to demonstrate that appellant did not reside in the gray house, located on John Street in Corwin, Ohio, during the time period specified in the indictment when appellant allegedly committed the rapes. Specifically, appellant's evidence shows that he moved out of the John Street residence prior to June 1, 1981.

After the introduction of this evidence, the prosecutor made a motion at trial to amend the indictment to conform to the evidence. The prosecutor's proposed amendment was designed to amend counts one and two of the indictment to reflect that the offenses enumerated therein would have occurred during the time interval in which appellant resided at the John Street residence in Corwin. The trial court determined that the exact or specific time of the offense was not an essential element which the state needed to prove and permitted the indictment to be amended in order to conform to the evidence.

An indictment is not rendered invalid for failing to state the time at which the offense was committed in those cases in which time is not an essential element of the crime. R.C. 2941.08(B). Likewise, such an omission will not stay, arrest or affect the trial, judgment or other proceedings. R.C. 2941.08(B). Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged. *Tesca* v. *State* (1923), 108 Ohio St. 287; *State* v. *Dingus* (1970), 26 Ohio App. 2d 131 [55 O.O.2d 280], affirmed (1971), 26 Ohio St. 2d 141 [55 O.O.2d 274].

In addition, Crim. R. 7(D) provides in part that:

"The court may at any time before, during, or after a trial amend the indictment, * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, *provided no change is made in the*

*name or identity of the crime charged.* * * *" (Emphasis added.)

In order to sustain a conviction under R.C. 2907.02(A)(3), the state must prove that the accused engaged in sexual conduct with another person who was not the spouse of the accused and that the other person was less than thirteen years of age, regardless of whether the accused was aware of the age of the other individual. Consequently, the exact time or date of an offense is not essential or material to proving the commission of a rape offense under R.C. 2907.02(A)(3).

The case at bar is practically on all fours with *State* v. *Gingell* (1982), 7 Ohio App. 3d 364. In *Gingell,* the defendant was indicted for multiple rape charges involving his eight-year-old stepdaughter. The indictment and bill of particulars averred that the defendant committed the offenses during broadly specified intervals over a fourteen-month period while he lived at three different residences. The trial court refused to dismiss the indictment on the grounds that it failed to sufficiently alert the defendant to the specific dates and times the charged offenses allegedly occurred.

Citing *Tesca, supra,* the court in *Gingell, supra,* at 366, held "* * * that averments of the exact time and date of an alleged offense are unessential to an indictment." The indictment need only contain language sufficient to alert the accused named therein that certain generally specified conduct constitutes a violation of an existing statute. Thus, the precise date and time of an offense are not essential elements of the offense. *Gingell, supra.*

The court went on to hold that:

"The real problem arises in cases, like the present, where the state is simply *unable* to comply with times and dates more specific than those found in the instant indictment. With all the best will in the world, information more specific and particular about when the incident occurred cannot be secured. * * * [I]t may arise, as here, because the only witnesses to the event are of tender years, unsophisticated or unlearned in applying a calendar date to an observed or experienced event. * * * Experience and common sense tell us that a certain degree of inexactitude of averments, *where they relate to matters other than elements of the offense,* is not *per se* impermissible or necessarily fatal to a prosecution." *Gingell, supra,* at 368.

In the case at bar, the state was unable to provide a more exact or specified time or date for the offenses. The times and dates of the charged crimes corresponded to those periods appellant resided in the gray and white houses. Absent a clear showing that the state possessed information or evidence which would permit it to establish a narrower time frame, appellant was not prejudiced by the state's failure to provide more specific times. Nor can we discern anything in the record "* * * growing out of the time intervals set out in the indictment which could be said to have violated or prejudiced defendant's ability to defend himself." *Gingell, supra,* at 369.

Since the amendment of the indictment did not change either the substance or the identity of the crime, the court acted properly when it permitted the amendment to be made. *Cincinnati* v. *Woods* (1974), 67 O.O.2d 372. Obviously, it was reasonable that the victims who were young children would not be able to remember precise and specific dates and times. The trial court's decision to permit the indictment to be amended did not prejudice appellant's right to due process or to a fair trial.

Appellant also claims that he was denied a fair trial when the court failed to grant his motion to compel the state to reveal the names of potential witnesses who appellant could use to impeach the credibility of Amy Sue

League. Appellant had contacted officials from the Miamisburg School District where the girl was enrolled in an attempt to discover the names of her teachers. Appellant believed that these individuals would provide a helpful insight into the girl's reputation for truth and veracity. Aside from confirming the girl's enrollment in the school system, the Miamisburg school officials refused to provide appellant's counsel with any further information.

Appellant claims that the state should have provided him with the names of potential witnesses he could have used to impeach one of the state's own witnesses. We feel that such a contention is totally without merit. Appellant's inability to secure his *potential* witnesses should not result in the state incurring the additional burden of investigating and preparing the accused's defense, especially where appellant could only speculate as to the potential use of such witnesses. For these reasons, the first assignment of error is hereby overruled.

The trial court determined that both Amy Sue League and David Matthew Madden were competent to testify at trial despite their ages. The Madden boy, who, to a certain degree, was mentally incapacitated, was originally declared to be incompetent at a pre-trial *voir dire* examination, but was later found to be competent to testify immediately before trial. Appellant's second assignment of error does not address the court's determination that the victims were competent to testify, but instead claims that it was error to allow the prosecutor to interrogate the children on direct examination through the use of leading questions.

Based on leading questions from the prosecutor, David Madden testified that appellant had placed his penis in David's mouth. Through the use of leading questions coupled with the demonstration of anatomically correct dolls, the testimony

of Amy League indicated that appellant had engaged in intercourse with the girl.

It is within a trial court's discretion to permit the state to ask leading questions of its own witnesses. *State* v. *Smith* (1977), 59 Ohio App. 2d 194 [13 O.O.3d 213]. In *State* v. *Holt* (1969), 17 Ohio St. 2d 81 [46 O.O.2d 408], the Supreme Court held that it was not an abuse of discretion to allow the prosecutor to interrogate a seven-year-old rape victim with leading questions on direct examination. Where the trial court has previously determined that a witness who is a child of tender age is competent to testify, it is not reversible error to allow the witness to testify when "* * * most of the questions asked * * * on direct examination were highly leading, eliciting answers generally given in monosyllables or by nods of the head." *Holt, supra,* at 83. We are in agreement with the above cited authorities and conclude that the trial court did not abuse its discretion in permitting the prosecutor to conduct direct examination on David Madden and Amy Sue League through the use of leading questions. See *State* v. *Lewis* (1982), 4 Ohio App. 3d 275.

In addition, we do not believe there was any error in the court's decision to allow the prosecutor to use dolls with anatomical details to assist Amy Sue League in describing the actions of appellant. The pertinent rule is adequately set forth in *State* v. *Lee* (1983), 9 Ohio App. 3d 282, 283, wherein the following was stated:

"* * * The record indicates that the witness was unable to relate to the jury the events using the appropriate sexual or physiological terminology. The dolls were used to clarify the witness' explanation and to insure a common understanding between the witness and jury as to the events which took place."

A review of the transcript reveals that Amy Sue League testified that appellant placed "his thing" on her and

that he put it in between her legs. The girl did not know the correct name for appellant's "thing" nor could she give a description of it. A doll with anatomical details was then used to illustrate and clarify the girl's testimony. Based on the victim's obvious lack of knowledge of the correct terms for human reproductive organs, there was no abuse of discretion in allowing the use of dolls to clarify the girl's testimony. Accordingly, the second assignment of error is overruled.

In his third assignment of error, appellant argues that his conviction was not sustained by the weight of the evidence. Appellant's position is based on the lack of physical evidence or impartial eyewitness testimony to substantiate his guilt. Appellant further contends that the testimony given by Amy Sue League was conflicting and unreliable. Appellant also produced numerous witnesses who testified about appellant's character and integrity. In deciding whether the verdict of a lower court is against the manifest weight of the evidence, a reviewing court must determine if the jury in the lower court proceeding was presented with substantial and credible evidence of probative value which would support every element of the charged crime beyond a reasonable doubt. *State* v. *Davis* (1980), 70 Ohio App. 2d 48 [24 O.O.3d 42]. When the record reveals that the jury was presented with such evidence, an appellate court will not disturb the lower court's finding of guilt. *Davis, supra*; *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340].

In the case at bar, each victim gave testimony to support a finding that appellant had committed the various acts of sexual conduct involved in the respective charges. In addition, the jury was presented with evidence of inculpatory statements made by appellant to police officers after he had been arrested. There was also evidence, admitted by stipulation, which revealed that appellant had failed to pass a polygraph exam. It is within the discretion of the jury to weigh evidence and determine the credibility of each witness. *Lee, supra.* From our review of the record, we are satisfied that the jury was presented with enough substantial and credible evidence to support every element of the crimes with which appellant was charged beyond a reasonable doubt. The third assignment of error is without merit and is hereby overruled.

It is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., KOEHLER and JONES, JJ., concur.