The STATE of Ohio, Appellee.

v.

GEBOY, Appellant.

[Cite as *State v. Geboy* (2001), 145 Ohio App.3d 706.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–2000–36.

Decided Aug. 30, 2001.

708

710

*Kim Kellogg–Martin,* Logan County Assistant Prosecuting Attorney, for appellee.

*Karl R. Rissland,* for appellant.

WALTERS, Presiding Judge.

Defendant–appellant, Alan R. Geboy, appeals a judgment of conviction and sentence rendered by the Court of Common Pleas of Logan County upon a jury verdict of guilty on nine counts of gross sexual imposition, four counts of felonious sexual penetration, and five counts of rape. For the reasons expressed in the opinion set forth below, we reverse the judgment of the trial court and remand for a new trial.

The aforementioned charges arose when the Logan County Grand Jury returned an eighteen-count indictment against appellant based upon evidence that he had been having an incestuous relationship with his biological daughter, D.D., now twenty-years-old, since the fall of 1988. Appellant pled not guilty and the case was tried to a jury in November 2000. After two days of testimony and several hours of deliberations, the jury found appellant guilty of all eighteen counts contained in the indictment.

As a result of the verdict, the court ordered appellant to serve the following consecutive prison terms: eighteen months on each of the eight counts of gross sexual imposition in violation of R.C. 2907.05(A)(3); fifteen months on the conviction for gross sexual imposition in violation of R.C. 2907.05(A)(1); eight years on each of the five convictions for rape in violation of R.C. 2907.02(A)(2); and life on each of the four convictions for felonious sexual penetration in violation of R.C. 2907.12(A)(2). In addition to these prison terms, the court also found appellant to be a sexual predator. The court filed the judgment entry on sentencing on November 29, 2000, and this timely appeal followed.

Appellant asserts several assignments of error for our review and consideration, which we have elected to address outside their original sequence.

"Assignment of Error 2

■ "Appellant was denied due process and a fair trial when the prosecuting attorney improperly repeatedly elicited statements from the state's witnesses that the appellant never denied the allegations made against him, never protested his innocence, and never suggested to anyone that his daughter was lying in making the allegations against appellant, when appellant exercises [sic] his right to silence and his right to consult an attorney."

The record indicates that shortly after D.D. disclosed the abuse to members of the Logan County Sheriff's Department, officers contacted appellant at his place of work and asked him to come to the office to discuss a law enforcement matter. Appellant agreed and followed Deputy Stephen Sines to the sheriff's department.

Upon being escorted to an interview room, Detective Jon Stout informed appellant that he was not under arrest, that he was free to leave, and that if he

wanted to consult an attorney, the discussion would immediately terminate. Detective Stout then attempted to advise appellant of his *Miranda* rights. However, appellant stated that he did not want to hear the rights at that point, and he demanded that the officers tell him what was going on. Detective Stout then informed appellant that his daughter had earlier reported some allegations of sexual abuse. Appellant responded by stating, "I can't believe my daughter is doing this to me." He apparently also indicated that he wanted to speak to his wife and to an attorney. Appellant made no further statements to the police.

During trial, the state referred to appellant's failure to specifically deny the accusations at several points in the transcript. First, during her opening statement, the prosecutor stated:

"[Members of the Logan County Sheriff's Department] presented to [appellant] the allegations that his daughter had made against him, so he was put on notice that the secret was out. All he said to the officers is, 'I don't understand why she's saying this. I need to talk to my wife and my attorney.'"

Next, during the direct exam of prosecution witness Deputy Stephen Sines, the following exchange took place:

"Q. While inside the interview room with Alan Geboy after presented with allegations, did he make any attempts to explain why his daughter would say such things?

"A. No. He—he didn't deny anything that was being put down in front of him, but he didn't—he really—he was unresponsive. He was just listening and thinking but he wasn't—he wasn't denying it or he wasn't saying yes, I did it or no, I didn't do it. The—I remember him saying I don't understand why she's doing this or why she's saying this. And he wanted to talk to his wife and talk to an attorney before he answered any questions for us."

Later, when questioning prosecution witness, Detective Jon Stout, on direct examination, this discussion occurred:

"Q. Okay. Did you then share with [appellant] what the allegations were?

"A. Yes, I did.

"Q. And how did he react?

"A. He wasn't shocked.

"Q. Did he make any attempts to tell you that the daughter was a liar?

"A. No. The only statement that he made to me in regards to this questioning was, 'I can't believe my daughter is doing this to me.'"

Finally, during the state's closing argument, the prosecutor made the following comment:

"What's also interesting is when Detective Stout and Officer Sines come upon him they tell you that he doesn't react with shock when he hears what the allegations are. Now, I ask you to think about this. If those accusations were made against you or somebody that you cared for deeply, do you think you might express a little bit of shock or you might express some emotion? He never, ever since being presented with the accusations did Alan Geboy ever tell his wife that their daughter was a liar, nor did he try to persuade the officers that she was lying."

It should be noted that defense counsel failed to enter an objection to these comments. Notwithstanding, we find merit to appellant's assertion that the prosecutor's statements resulted in unfair prejudice.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, the United States Supreme Court held that using the accused's post-*Miranda* silence or request for an attorney to discredit an exculpatory story first related at trial violates the Due Process Clause of the Fourteenth Amendment. See, also, *State v. Van Meter* (1998), 130 Ohio App.3d 592, 720 N.E.2d 934.

Subsequently, in *Jenkins v. Anderson* (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86, the court concluded that a defendant's constitutional rights are not violated when the state attempts to impeach through the use of prearrest silence. Rather, the court stated that the individual states are free to devise "evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial." *Id.* at 240, 100 S.Ct. at 2130, 65 L.Ed.2d at 96. The *Jenkins* court also distinguished its holding in *Doyle* based on the fact that *Miranda* warnings "inform a person that he has the right to remain silent and assure him, at least implicitly, that his subsequent decision to remain silent cannot be used against him." *Id.* at 240, 100 S.Ct. at 2130, 65 L.Ed.2d at 95. Thus, in the absence of governmental action provoking an individual to remain silent, the fundamental unfairness discussed in *Doyle* is not present.

Additionally, the court later found the reasoning of *Doyle* inapplicable in situations where the record does not demonstrate that *Miranda* warnings were received during the time that the accused remained silent directly after arrest. See *Fletcher v. Weir* (1982), 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490.

Despite these somewhat tenuous distinctions between prearrest and post-arrest silence, we observe that the present case is significantly distinguishable from *Doyle* and its progeny. Specifically, in *Doyle, Jenkins,* and *Fletcher,* the prosecutor's questions and comments were purportedly used for impeachment purposes during the cross-examination of the accused. In this case, however, the questions and comments regarding appellant's failure to profess his innocence were made during the prosecutor's opening and closing statements, and, most important, during the direct examination of the investigating officers. This is particularly

disturbing because "the evidence appears to be offered solely to imply that the defendant is guilty because he did not assert his innocence or make statements to the police." *State v. Maggard* (June 4, 1999), Montgomery App. No. 17198, unreported, at * 12, 1999 WL 355869, citing *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623.

Indeed, relevant case law from our sister courts has held that the introduction of the defendant's silence to the authorities during the state's case-in-chief, regardless of whether the *Miranda* warnings were given, is inappropriate in a situation where it is obviously used as nothing but substantive evidence of guilt. See *Maggard, supra; State v. Ospina* (1992), 81 Ohio App.3d 644, 611 N.E.2d 989; *State v. Burke* (Sept. 13, 1989), Pickaway App. No. 87CA40, unreported, 1989 WL 106927; *State v. Russell* (Dec. 30, 1988), Franklin App. No. 88AP-457, unreported, 1988 WL 142070. In explaining the inherent danger associated with this action on the part of the state, the Second District Court of Appeals explained:

"[T]he presumption of innocence and the prohibition against self-incrimination are well-established safeguards in our criminal justice system. In contrast to these safeguards, if substantive evidence of silence is introduced before the defendant testifies, the defendant is forced into an untenable position. He must either abandon his right to the presumption of innocence and allow the implication of guilt to stand, or give up his right not to testify. On the other hand, if the defendant chooses freely and without coercion to speak on his own behalf, fairness dictates that his credibility can be challenged by prior inconsistent behavior. Even then, however, *Doyle* prohibits impeachment by post-arrest silence if the defendant has received *Miranda* warnings." *Maggard* at * 14.

We agree with this reasoning and find that the prosecutor committed error in presenting evidence of appellant's silence to the jury in this case.

We now turn to the task of determining whether this error warrants a reversal. As noted, defense counsel failed to enter objections to the various comments and questions made by the prosecuting attorney. As such, we elect to perform a discretionary analysis under the plain error standard enunciated in Crim.R. 52. Plain error does not exist unless it can be said that, but for the alleged mistake, the outcome of the trial clearly would have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. Courts are cautioned to find plain error under extraordinary circumstances only, and to prevent a miscarriage of justice. *Id.* at paragraph three of the syllabus.

Additionally, although the Ohio Supreme Court has not adopted it as the law, we note the sound reasoning contained in Justice Cook's recent dissent,

explaining that the federal courts apply a three-prong formula to determine whether plain error exists rather than merely an outcome determinative test. *State v. McKee* (2001), 91 Ohio St.3d 292, 299, 744 N.E.2d 737, 743. Justice Cook stated that under *United States v. Olano* (1993), 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508, the court interpreted Fed.R.Crim.P. 52(b), which is identical to our own Crim.R. 52(B), by holding that in addition to an error that has affected the substantial rights of the accused, the error must be plain or obvious before a court should exercise its discretion to notice it. *Id.* That is, "if the law is unclear on a particular issue at the time of trial and remains that way at the time of appeal, the error cannot be plain * * *." *Id.*, citing *United States v. David* (C.A.4, 1996), 83 F.3d 638, 642–643.

While we acknowledge that plain error is an admittedly arduous legal hurdle to overcome, we are convinced that the prosecutor's numerous comments and questions, which were specifically designed to elicit responses about appellant's failure to profess his innocence to the authorities, seriously affected the outcome of the trial. This is especially true in light of the fact that the jury had to rely essentially upon the victim's testimony alone in order to return the guilty verdicts. As discussed more fully *infra*, while the remaining evidence is not legally insufficient, we are unwilling to categorize it as overwhelming.

As an aside, we note that appellant has also complained that error occurred when the prosecutor questioned his ex-wife on direct examination and specifically asked her whether appellant ever denied D.D.'s allegations to her. Appellant makes this assertion without citing any supporting authority, and we are unaware of any case law that has found that an accused's constitutional rights are violated when the state comments upon his or her silence to other witnesses outside the presence of the authorities. Accordingly, we do not find this component of the argument well taken.

Based upon the foregoing, appellant's second assignment of error is sustained insofar as it relates to the comments made about his failure to profess his innocence to the authorities.

## "Assignment of Error 3

"Appellant was denied due process and a fair trial when the prosecuting attorney improperly repeatedly 'bolstered' the complaining witness' story by commenting in closing argument that the complaining witness can be believed, that the complaining witness' story is the truth, that the jury can rely on the complaining witness and when the prosecution's witnesses testified that the complaining witness is a truthful person and an honest person, is not lying and is believed."

In this assignment of error, appellant complains that the prosecutor bolstered D.D.'s testimony through improper questioning of the state's witnesses and comments made during closing argument. We disagree.

■ We first address appellant's allegation that the prosecutor posed various questions to the state's witnesses that were specifically designed to bolster D.D.'s testimony. Initially, we observe that a careful review of the record indicates that defense counsel failed to object to all but one of these alleged incidents. Notably, the trial court sustained the one incident that actually was objected to. In any event, as we have already stated, the failure to object to an alleged error generally constitutes a waiver for purposes of appeal. Although this court could engage in a discretionary "plain error" analysis pursuant to Crim.R. 52(B), we cannot find any error in this respect, let alone plain error. Indeed, these questions and the resulting answers have been largely taken out of context. For example, when conducting the direct examination of Andrew Stoner, the following discussion took place:

"Q. * * * Okay. After [D.D.] provided her written feelings to you then, was she able to open up and discuss these things directly with you?

"A. It was a slow and painful process. She had repressed these feelings for many, many years and over a period of time not being able to talk about them the pain was very intense. It was a gradual process. I had to give her permission to feel again, and so gradually it did come back, yes. I needed to give her the unconditional acceptance and believe her. By believing her it empowered her to be able to get in touch with those feelings and start being able to become a somewhat normal person again. * * *"

We simply fail to see how this could be classified as improper bolstering by the prosecuting attorney.

■ We now move on to discuss the allegation that prosecutorial misconduct occurred during closing argument. The prosecution is generally entitled to a certain level of leeway during closing remarks. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. "A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones." *Id.*, citing *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321.

■ Normally, in order to determine whether prosecutorial misconduct occurred during closing arguments, we must resolve "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Smith*, 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885. Among other things, it is impermissible for a prosecutor to communicate his or her personal beliefs and opinions as to the credibility of a witness or the guilt of

the defendant. *Id.* The record in this case indicates, however, that defense counsel did not enter objections to the remarks about which appellant now complains. As such, this court may notice only plain error if it in fact exists in this context. See Crim.R. 52(B).

Again, the notion of plain error aside, we do not believe that any error occurred in this respect. Despite appellant's contentions, the prosecutor did not interject her personal beliefs about the veracity of D.D.'s testimony. The prosecutor merely argued to the jury that the evidence presented supports the theory that D.D. did not lie or concoct the story of abuse. Thus, appellant's assertions regarding misconduct during closing arguments are not well taken.

Appellant's third assignment of error is overruled.

### "Assignment of Error 4

"Appellant was denied due process and a fair trial when the prosecuting attorney repeatedly invaded the province of the jury and, in its examination of the state's witnesses, assumed the ultimate issue that was to be determined by the jury to be true."

In this assignment of error, appellant complains that the prosecutor engaged in misconduct by frequently using such words as "incest," "abuse," and "molestation," particularly when questioning the witnesses. Since the ultimate fact at issue in this case was whether appellant committed the charged sex offenses against his daughter, appellant contends that the prosecutor improperly and repeatedly communicated a legal conclusion to the jury through the use of this language. This argument is wholly without merit.

In reviewing the trial transcript, we must first point out that counsel for the defense never entered an objection to the prosecutor's utilization of these words. Despite this, we find no error in this conduct whatsoever, plain or otherwise.

It is well established that the test for prosecutorial misconduct is whether the comments or questions at issue were improper and whether they resulted in prejudice to the defendant's substantial rights. *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771–772. We acknowledge that a prosecuting attorney has a duty to avoid making suggestions or comments deliberately aimed at misleading the jury and to refrain from discussing matters that are not supported by the evidence. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300–301. However, we do not agree that the use of these generic, everyday terms to describe the alleged conduct between appellant and his daughter to be improper or prejudicial. Nor do we find that these terms were unsupported by the evidence presented.

Appellant's fourth assignment of error is overruled.

"Assignment of Error 5

"The trial court erred to the prejudice of the appellant when it repeatedly permitted the introduction of hearsay testimony of Joshua McKinley and [S.S.]."

■ Prior to reaching the merits of this assertion, we set forth the correct standard of review to which this court must adhere in disposing of evidentiary issues. An appellate court reviews a decision on the admissibility of evidence on an abuse of discretion standard. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Thus, we are obliged to affirm an evidentiary ruling unless we find that the trial court has abused its discretion.

■ Hearsay is ordinarily inadmissible unless one of the various exceptions applies. See Evid.R. 802. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

■ In this assignment of error, appellant complains that the trial court admitted improper hearsay testimony from two of the state's witnesses, Josh McKinley and S.S. The record shows that sometime after she began attending college at the Ohio State University in Lima, D.D. confessed to her friend, Josh McKinley, that her father had been sexually abusing her. Out of concern, Josh relayed this information to D.D.'s older sister, S.S., in June 1999. S.S. then prompted D.D. to notify the authorities.

With respect to Josh McKinley's testimony, the court did not allow the prosecutor to elicit any details about what D.D. had disclosed to him. Thus, we are not aware of any specific hearsay statements relayed to the jury by this witness. In any event, even if Josh McKinley did make a vague reference to the contents of his conversation with D.D., the admission of this hearsay testimony would be nothing more than harmless error given the fact that D.D. testified at trial and was cross-examined on the same subject matter. See *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 281, 515 N.E.2d 963, 966–967.

■ Likewise, we find no error surrounding the testimony elicited from S.S. S.S. essentially testified about the fact that Josh informed her of D.D.'s problems at home. This evidence cannot be identified as hearsay, since it was obviously not offered for the truth of the matter asserted, *i.e.*, that D.D. was actually being molested by her father. Rather, the evidence was offered to demonstrate how S.S. became involved in the situation and, even more so, how D.D. came in contact with the authorities. It should be noted that the trial court refused to allow the prosecuting attorney to go beyond the scope of the information that Josh had relayed. In fact, the trial judge sustained an objection when the

prosecutor attempted to ask S.S. about whether D.D. ever verified Josh's statements. Thus, there is no error surrounding the admission of S.S.'s testimony.

For these reasons, appellant's fifth assignment of error is overruled.

"Assignment of Error 6

"The trial court erred to the prejudice of the appellant when it permitted the introduction of the hearsay testimony of Andrew Stoner."

In this assignment of error, appellant argues that the trial court erred in allowing Andrew Stoner, a licensed mental health counselor, to testify as to certain statements made by D.D., explaining that she endured several years of sexual abuse at the hands of her father. We are not persuaded.

At the outset, we must reiterate the observation that a trial court's decision on the admissibility of evidence is not subject to reversal in the absence of an abuse of discretion. See *Sage* at paragraph two of the syllabus. An abuse of discretion has been described as a judgment that is either unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

As previously stated, the Ohio Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible unless the statement falls within the purview of some exception to the hearsay rule. Evid.R. 802.

In this case, the trial court found the testimony from Stoner to be admissible under the medical diagnosis/treatment exception to the hearsay rule:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803.

The rule does not expressly limit its scope to statements regarding the declarant's physical or bodily condition. *State v. McWhite* (1991), 73 Ohio App.3d 323, 329, 597 N.E.2d 168, 171–172. In fact, the rule has been interpreted as to include diagnosis and treatment of psychological injuries as well as physical ailments. See, *e.g., State v. Grooms* (Aug. 19, 1998), Summit App. No. 18558,

unreported, 1998 WL 487087, at * 2. Accord *Knor v. Parking Co. of Am.* (1991), 73 Ohio App.3d 177, 185, 596 N.E.2d 1059.

Additionally, relevant case law provides that the rule should not be read to encompass only those statements made to a medical doctor. See *In re Weather-holt* (Feb. 4, 2000), Seneca App. Nos. 13–99–31 and 13–99–32, unreported, 2000 WL 126662, at * 5. This narrow construction "would undercut the function of nurses, psychiatrists, therapists and various individuals who treat victims of sexual abuse." *Id.*, quoting *State v. Chappell* (1994), 97 Ohio App.3d 515, 530, 646 N.E.2d 1191, 1200.

▇▇▇ Herein, D.D. was referred to Stoner by her physician in the summer of 1999 for emotional counseling because she was apparently displaying signs of an eating disorder and depression. As noted, Stoner has obtained a mental health counselor's license from the state of Indiana. Although Stoner's educational degrees come from institutions that teach and train ministers, the evidence is clear that D.D. was not referred for, nor did she seek, any type of religious counseling.

Stoner then testified that because D.D.'s emotional troubles stemmed from the abuse, it was necessary for the purposes of treatment that he elicit the details of the abuse and the reasons why it continued for such a long period of time. Accordingly, we do not believe that the trial court erred in admitting Stoner's testimony under Evid.R. 803(4).

▇▇▇ Furthermore, we must point out that even if the trial court did incorrectly allow the admission of this evidence, it could not be considered prejudicial error. Any error in the admission of hearsay is generally harmless when the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature. See *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 281, 515 N.E.2d 963, 966–967. Given the fact that D.D. was present in court and subject to full cross-examination on the statements that she apparently made during the counseling sessions, we find that error, if any, in the admission of Stoner's testimony is indeed harmless.

Accordingly, appellant's sixth assignment of error is without merit and must be overruled.

## "Assignment of Error 7

"The trial court erred when it failed to grant the appellant's motion for acquittal at the close of the state's case as the evidence was insufficient to sustain a conviction."

▇▇▇ We begin our discussion herein with the premise that in reviewing a trial court's decision to deny a timely motion for acquittal made pursuant to Crim.R.

29, an appellate court must examine the evidence admitted during trial in a light most favorable to the state, and ask whether, if believed, any rational trier of fact could have found the material elements of the offense proven beyond a reasonable doubt. *State v. Carter* (1995), 72 Ohio St.3d 545, 553–554, 651 N.E.2d 965, 973–974, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. As such, in performing a sufficiency analysis, we must focus on adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

In this case, the jury returned guilty verdicts on nine counts of gross sexual imposition, which occurred at various times between the fall of 1988 and the summer of 1999. In reviewing the past and current versions of R.C. 2907.05, the statute defining gross sexual imposition, it is apparent that eight of the charges involved that portion of the statute, now codified in R.C. 2907.05(A)(4), which prohibits sexual contact with another, not the spouse of the offender, when the other individual is less than thirteen years old. The last of these charges accused appellant of violating R.C. 2907.05(A)(1), which prohibits sexual contact with another, not the spouse of the offender, and when the offender purposely compels the other individual to submit by force or threat of force. We also note that at all times relevant, the term "sexual contact" has been defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." See R.C. 2907.01(B).

In addition to these crimes, appellant was also found guilty of committing felonious sexual penetration on four separate occasions between September 1992 and November 1993. At the time of these offenses, R.C. 2907.12 defined felonious sexual penetration as follows:

"(A)(1) No person, without privilege to do so, shall insert any part of the body, or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when either of the following applies:

"* * *

("b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

"(2) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another when the offender purposely compels the other person to submit by force or threat of force."

Appellant was also convicted of committing five rape offenses between September 1996 and December 1998. As to the essential elements of rape, the Ohio Revised Code provides:

"No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

The relevant version of R.C. 2907.01(A) further defines the term "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *."

Furthermore, with respect to the rape of a minor, it has been held that the statute requires only minimal force or threat of force and that when a parent sexually abuses his child, "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 58–59, 526 N.E.2d 304, 306. *Eskridge* was subsequently distinguished by the court when it held that in the case of an adult victim, regardless of the existence of a parent-child relationship, "a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, paragraph one of the syllabus. That is, if the victim has reached the age of majority, the state must present evidence that the defendant "[used] physical force against that person, or [created] the belief that physical force will be used if the victim [did] not submit." *Id.*

In applying the above standard to the offenses for which appellant was tried, we find that there is sufficient evidence to sustain all eighteen convictions. With respect to the charges for gross sexual imposition, D.D. testified that her father began touching her in an inappropriate manner in 1988, when she was approximately eight years old. She stated that during her elementary school years, appellant would feel her breasts, make her touch his penis, and rub his penis on her stomach. D.D. also described the final incident of abuse when, in June 1999, appellant forced her into a corner, pinched her breasts, and told her that she was going to "please" him all summer.

As to the convictions for felonious sexual penetration, D.D.'s testimony demonstrates that the abuse became more intense when she began to attend middle school, sometime around the age of eleven. During these years, D.D. stated that appellant would place his fingers inside her vagina and ejaculate on her stomach.

■ The evidence supporting the five rape charges indicates that once D.D. reached high school, appellant compelled her to perform oral sex. At the age of fifteen, D.D. had intercourse with her father for the first time; this activity continued on a frequent basis, sometimes as often as four times a week. With regard to the issue of force, D.D. stated that she was afraid of her father and that he would sometimes drag her by the arm, push her up the stairs, or force himself on top of her just prior to the commission of these offenses. D.D. also testified that her father would repeatedly tell her that if she confessed to anyone about the abuse she would cause a breakup of the family and her mother would commit suicide from the resulting emotional distress.

Based upon the foregoing, we find that the trial court did not err in denying appellant's timely Crim.R. 29 motion for acquittal. In looking at the evidence in a light most favorable to the state, as we are required to do, we believe that any rational trier of fact could have found that the essential elements of gross sexual imposition, felonious sexual penetration, and rape were proven beyond a reasonable doubt.

In contrast, appellant suggests that the evidence is necessarily insufficient because there was no medical, scientific, or eyewitness evidence to corroborate D.D.'s version of the events. We cannot agree.

This court has previously held that there is " 'no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction.' " *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346, 349, quoting *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 464–465, 455 N.E.2d 1066, 1068–1069. Moreover, the record does contain some circumstantial corroboration of D.D.'s testimony, including the evidence that her mother consistently worked long, irregular hours over the years, providing appellant with the opportunity to be alone with the children for extended periods of time. Thus, appellant's argument must fail.

■ Appellant also argues that the trial court erred in refusing to grant the motion for acquittal because the state failed to prove the exact dates and times of when these sex offenses occurred. Again, we find otherwise.

■ According to the Ohio Revised Code, the precise dates and times are not essential elements of the crimes for which appellant was convicted. See R.C. 2907.02; R.C. 2907.05; and former R.C. 2907.12. "Where the exact date and time of an offense are not material elements of a crime [or] essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged." *State v. Madden* (1984), 15 Ohio App.3d 130, 131, 15 OBR 221, 223, 472 N.E.2d 1126, 1128.

In cases of long-term abuse, the state is often forced to contend with a legitimate dilemma in that the victims, due to tender years or lack of sophistication, do not associate these events with a particular calendar date. *Id.* at 132, 15 OBR at 223–224, 472 N.E.2d at 1128–1129. For this reason, "[e]xperience and common sense tell us that a certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution." (Emphasis deleted.) *Id.* Absent a clear demonstration that the prosecutor actually possessed more specific information regarding the time for the offenses, the accused is not prejudiced by the failure to set forth a narrower time frame. *Id.*

In this case, there is no allegation that the prosecutor had in her possession more specific dates and times as to the occurrence of the crimes. Rather, the dates and times of the charged offenses largely corresponded to the commencement of D.D.'s academic years. This is consistent with the victim's testimony that the abuse became more severe as she progressed through school. D.D. also stated that some type of inappropriate sexual behavior occurred nearly every day during the years specified in the indictment. Therefore, we conclude that the state's inability to provide more specific dates and times of these various offenses does not warrant a finding of insufficient evidence.

Appellant's seventh assignment of error is overruled.

## "Assignment of Error 8

"The trial court erred to the prejudice of the appellant when it permitted the spouse of the appellant to testify, in a case involving rape and gross sexual imposition, to the sexual activity of the appellant, when that sexual activity did not involve evidence of the origin of semen, pregnancy, disease, or past sexual activity with the alleged victim, and when the decision to allow the testimony was made the morning of trial."

The record reveals that prior to trial, counsel for the defense made a motion *in limine* to exclude any reference to the fact that appellant and his ex-wife had not engaged in sexual activity since 1988, approximately the same time as appellant began to abuse D.D. The trial court overruled the motion in open court on the morning of trial. Appellant now complains that the trial court committed prejudicial error because that evidence was admitted in violation of Ohio's "rape shield" law, codified in R.C. 2907.02(D), which states:

"* * * Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under

section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

We must disagree with appellant's assertion due to the state of the record. Although appellant raised an objection to the use of this evidence prior to trial through his motion *in limine*, a review of the transcript reveals that counsel for the defense failed to enter an objection to the evidence at the time of its introduction.

It is well established that a decision on a motion *in limine* is a "tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context." *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 28 OBR 285, 503 N.E.2d 142, 146. Because a ruling on a motion *in limine* is not considered final, "[a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial." *Id.* See, also, *Gollihue v. Consol. Rail Corp.* (1997), 120 Ohio App.3d 378, 388, 697 N.E.2d 1109. For these reasons, we find that any challenge to the introduction of this evidence has been waived. Moreover, we are convinced that even if this particular question constituted error in violation of the rape shield law, we cannot conclude that it would rise to the level of plain error under the standard set forth in our previous discussions.

Appellant's eighth assignment of error is overruled.

"Assignment of Error 1

"The appellant was denied due process and a fair trial when the prosecutor improperly and repeatedly introduced hearsay testimony, improperly bolstered the credibility of the complaining witness, introduced hearsay testimony from a family counselor on the pretext that it was in connection with medical treatment, all the while referred to the person as 'doctor' and invaded the province of the jury on the ultimate issue to be decided."

This first assignment of error does not set forth a separate argument. Instead, its purpose is merely to summarize the substance of the remaining assignments of error. Because we have already ruled on each of the issues contained herein, this assignment of error has been rendered moot.

Having found error prejudicial to the appellant in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for a new trial on the merits.

*Judgment reversed*
*and cause remanded.*

Thomas F. Bryant, J., concurs.

Shaw, J., dissents.

Shaw, Judge, dissenting.

I respectfully dissent from the decision of the majority to reverse this conviction based upon the state's efforts to introduce and characterize certain statements the defendant made to law enforcement officers. Considering the total record before us, I take particular exception to the conclusion of the majority that in the absence of any defense objection, the state's actions constitute plain error.

Contrary to the premise relied upon by the majority in reaching its decision, the case before us cannot be classified simply as one of improper comment upon post-arrest or post-Miranda *silence*. The defendant here·was not under arrest at the time of the statements and he was not silent. He made several remarks upon first hearing the police relay the allegations his daughter had made against him, to the effect that he could not understand why his daughter would say such things and that he needed to speak with his wife and attorney.

There is no argument raised by counsel or the majority of this court that these statements were obtained in violation of the defendant's *Miranda* rights or were otherwise inadmissible in any respect. In fact, there is nothing in these statements that makes them inherently indicative of guilt. On the contrary, it could just as easily be argued that the defendant's reaction was one that any innocent person might have if suddenly confronted with such serious and alarming allegations at a police station—which no doubt explains the failure of defense counsel to object to them.

I do not endorse the prosecution strategy of commenting and speculating as to what else the defendant should have said or, in particular, implying that his mention of an attorney was indicative of guilt. As correctly noted by the majority, both of these areas are fraught with peril of reversible error in the right circumstance. However, the statements actually made in this case were plainly ambiguous and, as such, were open to characterization and argument by both sides for whatever persuasive effect they may have at trial, which is essentially what happened here.

Nevertheless, even assuming that some of the testimony elicited by the state or comments of the prosecution constituted error, I do not believe any of these matters rise to the level of plain error. In the first instance, as recited by the majority under the seventh assignment of error, the direct evidence of sexual abuse in this case was extensive, including a college-age victim who testified to multiple incidents of sexual abuse involving at least three different levels of

criminal sexual activity over an eleven-year period. More specifically, while the majority does not mention it, examination of the record reveals that in addition to the statements to the police and his ex-wife noted earlier, the defendant also wrote a letter to his daughter, which was introduced into evidence. All of these statements, whether to the police, his ex-wife, or to his daughter, in the letter were similarly ambiguous and, hence, susceptible of a permissible argument that they were or were not indicative of the defendant's guilt.

In the context of these different statements and the extensive direct testimony of the victim in this case, I do not believe that the prosecution's additional argument at trial, that on at least one of these three occasions, something more would have been said by any "innocent" man, while perhaps an imprudent and risky tactic, in any sense rises to the level of plain error. I would affirm the judgment of conviction and sentence entered in the trial court in all respects.