DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Ronmetrious D. Scott, guilty of attempt to commit murder with a firearm specification, felonious assault with a firearm specification and aggravated robbery with a firearm specification. After sentencing on his convictions, appellant filed a timely notice of appeal. He sets forth the following assignments of error:
 {¶ 2} "The prosecutor's misconduct during closing argument denied the defendant-appellant due process of law as guaranteed by theFourteenth Amendment to the Constitution of the United States, and Article I, Section 10 of the Ohio Constitution."
 {¶ 3} "The defendant-appellant was denied effective assistance of counsel at trial, in violation of his Sixth Amendment rights."
 {¶ 4} "The cumulative effects of the errors in the case herein, denied the defendant-appellant a fair trial requiring that the convictions herein be reversed and the case remanded."
 {¶ 5} "The trial court erred when it ordered the defendant-appellant to pay court-appointed counsel's fees and to make an unspecified, unsubstantiated sum of restitution."
 {¶ 6} At appellant's trial, the following relevant facts were presented by the victim in this case, Jacky Easterly. Jacky is, biologically, a male. Jacky, however, prefers to live his life as a female.
 {¶ 7} On the evening of February 2, 2001, Jacky and a friend, Gloria Bean, went out for the evening. Gloria drove her 1995 white Pontiac Firebird. After frequenting two other bars, Jacky and Gloria decided to go to an after hours club where they met appellant. Jacky indicated that he knew appellant prior to this time and that appellant was aware of the fact that Jacky was a male who dressed as a female.
 {¶ 8} As Jacky and Gloria left the after hours club, appellant followed them in his car. When Jacky, who was driving the Firebird at that time, stopped at a corner, appellant parked his car behind the Firebird, walked to the driver's side window and asked for Jacky's telephone number. Jacky gave him that number. Jacky and Gloria then went to Jacky's home.
 {¶ 9} About 15 minutes after they arrived at Jacky's house, appellant called and asked Jacky to come and get him. Jacky agreed and drove Gloria's Firebird to a corner on Dorr Street near the New Town Apartments to pick up appellant. When they returned to Jacky's house, they first listened to some music and talked. Appellant then expressed an interest in seeing Jacky's body. Jacky undressed, and he and appellant engaged in "sexual contact."
 {¶ 10} Shortly thereafter, Jacky drove appellant back to the same corner near the New Town Apartments. However, when they arrived, a woman came out of the building; therefore, appellant told Jacky to drive around the corner and into an alley behind the building. Jacky refused. At that point appellant pointed a black handgun, later identified as a .380 Lorcin, at Jacky and told him to drive. Jacky complied. Appellant began yelling derogatory remarks at Jacky while they were driving around. Appellant then hit Jacky across the head with the gun while telling him to turn into another alley.
 {¶ 11} After the vehicle was stopped, appellant pointed the gun to Jacky's head, held him by the coat, and told him to get out of the car. Once they were out of the car, Jacky began struggling with appellant, who began firing the gun. Appellant first shot Jacky in the back and then shot his victim in the head. At this point, Jacky fell to the ground. Appellant then got into the Firebird, and shot at Jacky again. The bullet went through Jacky's left earlobe. Appellant drove away in Gloria's car.
 {¶ 12} Jacky identified appellant as his assailant in a photo array shown to him while he was in the hospital. He also identified him as his attacker at appellant's trial. Other testimony adduced at that trial disclosed that appellant was apprehended in Akron, Ohio and that the 1995 white Pontiac Firebird was found in South Carolina.
 {¶ 13} In addition, appellant testified in his own defense. He asserted that he did not know Jacky; that although he was in the after hours bar on the morning of February 3, 2001, he did not see Jacky or ask for his telephone number; that he never called Jacky, and that he was never with the victim on February 3, 2001.
 {¶ 14} In his first assignment of error, appellant contends that the misconduct of the prosecutor in questioning him about both his "pre-arrest and post-arrest silence" and commenting on this silence during closing argument deprived him of his constitutional right to a fair trial under the United States and Ohio Constitutions.
 {¶ 15} "[T]he standard for prosecutorial misconduct is whether the comments and/or questions were improper, and, if so, whether they prejudiced appellant's substantial rights." State v. Lott (1990),51 Ohio St.3d 160, 165.
 {¶ 16} In the present case, a reading of the prosecutor's cross-examination of appellant reveals that the prosecutor did not ask appellant about any alleged pre-arrest silence. Moreover, even if appellant was subjected to a cross-examination concerning his pre-arrest silence, his constitutional rights would not be violated because such evidence may be used for impeachment purposes. Jenkins v. Anderson
(1980), 447 U.S. 231, 239; State v. Geboy (2001), 145 Ohio App.3d 706,714.
 {¶ 17} The prosecutor did question appellant concerning his post-arrest silence, inquiring as to why appellant did not tell the police his side of the story. Trial counsel objected to this questioning on the ground that appellant had a right to counsel and therefore his silence could not be used against him.
 {¶ 18} In Doyle v. Ohio (1976), 426 U.S. 610, the United States Supreme Court held that after an accused receives the warnings required by Miranda v. Arizona (1966), 384 U.S. 436, the use of his or her post-arrest silence or a request for an attorney to discredit an exculpatory story first related at trial violates the Due Process Clause of the Fourteenth Amendment. Nonetheless, that court later concluded that the reasoning in Doyle is inapplicable in situations where the record does not affirmatively demonstrate that Miranda warnings were received during the time that the accused remained silent directly after arrest. See Fletcher v. Weir (1982), 455 U.S. 603, 607.
 {¶ 19} There is no evidence in the record of the case before us as to where and when appellant was advised of his Miranda rights. The prosecutor's questions related to appellant's post-arrest silence were clearly used for impeachment purposes during the cross-examination of an accused who chose to take the stand in his own defense. Thus, those questions were perfectly proper. See State v. Cooper (Nov. 18, 1999), Cuyahoga App. No. 75282. Additionally, in commenting on appellant's post-arrest silence during his closing argument, the prosecutor was simply recounting the testimony already heard by the jury. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 20} Appellant's second assignment of error contends that he was denied effective assistance of counsel as guaranteed by theSixth Amendment to the United States Constitution.
 {¶ 21} The standard for evaluating an ineffective assistance of counsel claim was enunciated by the Supreme Court of Ohio in State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, as follows:
 {¶ 22} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 358 N.E.2d 623; Strickland v. Washington [1984],466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052, followed.)
 {¶ 23} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 24} In the case under consideration, appellant claims that his trial counsel's performance was deficient in three particulars. First, appellant maintains that trial counsel's performance was deficient because he failed to object when Lucas County Deputy Sheriff Jeff Kozar testified that he is a member of the Northwest Ohio Violent Crime Fugitive Task Force and that the purpose of this unit is to "work violent crime, fugitives." Appellant maintains that this testimony was prejudicial because it implied that he was a violent felon fleeing from justice.
 {¶ 25} Deputy Kozar testified that he was a member of a unit that investigates and determines whether a criminal suspect fled this jurisdiction, this state, or any other state. If it is determined that the suspect is a fugitive, the unit obtains a federal warrant for his or her arrest. Deputy Kozar explained that when appellant was arrested in Akron, Ohio, he and other officers in his unit went there to escort the accused back to Lucas County. Deputy Kozar further stated that appellant was cooperative. Appellant, in his testimony, said that he knew that he was classified as a fugitive and therefore turned himself in. For the following reason, we do not find that any of this testimony was objectionable.
 {¶ 26} Appellant was a suspect for the commission of three violent crimes. It is undisputed that he left the jurisdiction in which these crimes were committed. The recitation of the facts leading to appellant's arrest for these crimes were not offered as evidence of his allegedly violent nature. Rather, it was simply a description of the deputy's job title and duties. This testimony was relevant to the sequence of events leading to appellant's arrest for the alleged crimes. See Evid.R. 401. In fact, Deputy Kozar's testimony was favorable to appellant because the officer described him as "cooperative." Therefore, trial counsel did not fail in any essential duty to his client by not objecting to Deputy Kozar's testimony.
 {¶ 27} Next, appellant argues that trial counsel's performance was deficient in that counsel failed to object to the prosecutor's attempt to infer that appellant is a member of a street gang known as the Crips.
 {¶ 28} During his direct testimony, appellant categorically denied having any kind of a relationship with Jacky Easterly, stating that he was a heterosexual — not gay. On cross-examination, the prosecutor emphasized the fact that appellant feared that he would be labeled as a gay by his friends and associates if the episode with Jacky came to light. Apparently, as part of this strategy, the prosecutor attempted to imply that appellant was a member of a gang by asking him about street names and gang colors. Appellant denied any knowledge of the significance of either street names or colors, and the prosecutor moved on to another line of questioning.
 {¶ 29} Assuming arguendo, that trial counsel's performance was deficient in failing to object to the questioning concerning gangs, appellant failed to prove any resulting prejudice. The testimony of Jacky Easterly established that appellant was his assailant and the one who drove off in Gloria Bean's motor vehicle. In addition, Ralpheal Walker, who lives with his mother, Taceshia Walker, in an apartment on Dorr Street, identified appellant as the person who came into their apartment on the morning of February 3, 2001 (per Taceshia Walker's testimony), and put a red bandana in the kitchen cabinet. Upon searching that apartment the police found a .380 Lorcin handgun wrapped in a red bandana in that cabinet. That gun was identified as the one used in the shooting of Jacky Easterly. Thus, based upon all the evidence offered at appellant's trial, appellant fails to show the existence of a reasonable probability that, were it not for counsel's error, if any, the result of the trial would have been different.
 {¶ 30} Finally, appellant contends that trial counsel's performance was deficient because he failed to object to the prosecutor's comments on appellant's post arrest-silence during closing arguments. We have already stated that the comments made were merely a recitation of the testimony elicited through a proper cross-examination. Therefore, trial counsel did not fail in any essential duty to his client by failing to object to these comments. For all of the foregoing reasons, we find that appellant's claim of ineffective assistance of counsel is without merit, and appellant's second assignment of error is found not well-taken.
 {¶ 31} Appellant asserts, in his third assignment of error, that he has demonstrated that his trial "was replete with error." He therefore maintains that these cumulative errors deprived him of a right to a fair trial. While cumulative errors can deprive a defendant of his constitutional right to a fair trial , see State v. DeMarco (1987),31 Ohio St.3d 191, we have carefully examined the record of this cause and found it exceptionally free of error. Since multiple errors are a prerequisite for the application of the doctrine of cumulative error, seeState v. Garner (1995), 74 Ohio St.3d 49, 64, we must find appellant's third assignment of error not well-taken.
 {¶ 32} In appellant's fourth and final assignment of error, he claims that the trial court erred in including the costs of his appointed counsel in his sentence without first ascertaining whether he had the means to pay those fees pursuant to R.C. 2941.51(D). Appellant also insists that the trial court erred in ordering him to pay an unspecified amount of restitution.
 {¶ 33} At appellant's sentencing hearing, the court ordered appellant to pay "all restitution, all costs of prosecution, and any fees permitted pursuant to Revised Code 2929.18(A)(4)." R.C. 2929.18(A)(4) deals with the costs of confinement. Assessment of the "costs of prosecution" in a criminal sentence is mandated by R.C. 2947.23 and includes the fees of the jurors. It does not, however, require or allow the trial court to impose the fees of a defendant's court-appointed attorney. Thus, we conclude that such costs were not included in appellant's sentence, and R.C. 2941.51(D) is inapplicable to this cause.
 {¶ 34} As to the second issue raised by appellant, the state concedes, and we agree, that the common pleas court could not order appellant to pay an unspecified amount of restitution.
 {¶ 35} R.C. 2929.18(A)(1) provides that a court imposing a sentence upon an offender for a felony may, inter alia, order the offender to pay restitution " to the victim of the offender's crime * * * in an amount based on the victim's economic loss." The restitution must bear a reasonable relationship to the loss suffered. State v. Barnes, 2002 Ohio 1025. The victim's loss must be substantiated through documentary evidence or testimony. State v. Marbury (1995),104 Ohio App.3d 179, 181. As that was not done in this case, we find that appellant's argument concerning restitution has merit. Accordingly, appellant's fourth assignment of error is found not well-taken, in part, and well-taken, in part.
 {¶ 36} The judgment of the Lucas County Court of Common Pleas is affirmed in all respects except for the inclusion of an unspecified amount of restitution in the sentence imposed. That provision, and that provision only, is ordered reversed and vacated, and this cause is remanded to the trial court for further proceedings consistent with this judgment. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., and Arlene Singer,J., CONCUR.