OPINION
{¶ 1} Defendant-appellant, Alan R. Geboy, appeals from the judgment of conviction and sentence rendered by the Court of Common Pleas of Union County upon a jury verdict of guilty on nine counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), R.C. 2907.05(A)(3) and R.C. 2907.05(A)(4); two counts of felonious sexual penetration in violation of R.C. 2907.12(A)(2); and five counts of rape in violation of R.C. 2907.02(A)(2) .
{¶ 2} The aforementioned charges arose when the Logan County Grand Jury returned an eighteen-count indictment against Appellant, a resident of Bellefontaine, based upon evidence that he had been sexually molesting his biological daughter, now twenty-one years-old, since the fall of 1988. Appellant entered a plea of not guilty. Subsequently, the case was tried to a jury and Appellant was convicted on all eighteen counts. This court reversed that conviction in State v. Geboy, 145 Ohio App.3d 706,764 N.E.2d 451, 2001-Ohio-2214. Thereafter, a second trial commenced in March 2002, at which time the state presented testimony from seven witnesses, including the alleged victim, hereinafter D.D. .
{¶ 3} According to D.D., the appellant began exposing himself to her when she was eight years old. She alleged that, over time, the abuse escalated from fondling and rubbing to oral sex and then ultimately to vaginal penetration. While in her first quarter of college at The Ohio State University, Lima Campus, a friend, Josh McKinley, confronted D.D. with suspicions that she was being sexually abused. D.D. admitted to McKinley that her father was abusing her, but made him swear not to tell. Initially, the boy complied with her request. However, after an incident in which D.D. alleged her father accosted her in the shower, McKinley drove to Bellefontaine from Lima and confided what he knew to D.D.'s older sister, Kelly. Kelly confronted D.D. with the information and escorted her to the police to file a report.
{¶ 4} Appellant presented eight witnesses in his defense. Ultimately, the jury found Appellant guilty of all but two counts contained in the indictment. Consequently, the court ordered Appellant to serve the following consecutive prison terms: eighteen months on each of the eight counts of gross sexual imposition in violation of R.C.2907.05(A)(3); fifteen months on the conviction for gross sexual imposition in violation of R.C. 2907.05(A)(1); eight years on each of the five convictions for rape in violation of R.C. 2907.02(A)(2); and two life sentences for the convictions on felonious sexual penetration in violation of R.C. 2907.12(A)(2). In addition to these prison terms, the court adjudicated Appellant a sexual predator. The court filed the judgment entry of sentencing on April 19, 2002 and it is from this order that Appellant now appeals.
{¶ 5} Appellant raises the following assignments of error:
{¶ 6} "Mr. Geboy's convictions are against the manifest weight of the evidence."
{¶ 7} "The trial court erred in denying Mr. Geboy's motions for acquittal because there was insufficient evidence to prove that he was guilty of felonious sexual penetration as alleged in Counts Nine and Ten of the Indictment. Mr. Geboy's convictions for these offenses violate due process."
{¶ 8} "The trial court erred in denying Mr. Geboy's motion for acquittal because there was insufficient evidence to prove that he was guilty of rape as alleged in Count Seventeen of the Indictment."
{¶ 9} "The trial court erred in denying Mr. Geboy's motion for acquittal because there was insufficient evidence of rape as alleged in Counts Thirteen through Seventeen of the Indictment because there was no proof of force. Mr. Geboy's convictions for these offenses violate due process."
{¶ 10} "Trial counsel was ineffective for failing to object to prosecutorial misconduct during closing arguments, and for failing to object to Dr. Stoner's testimony on proper grounds. Counsel's ineffectiveness substantially prejudiced Mr. Geboy's defense and denied him due process of law."
{¶ 11} "The trial court denied Mr. Geboy due process, a fair trial and his right of confrontation by admitting States Exhibit 6, a chart of Jodi's accusations created by prosecutor, over Mr. Geboy's objections."
{¶ 12} "The trial court plainly erred in failing to make and support the requisite statutory findings before imposing consecutive sentences for the five rape charges."
{¶ 13} "The trial court erred in sentencing Mr. Geboy to life terms for Counts eleven and twelve, because he was not found guilty of these charges."
{¶ 14} As an initial matter, we will address Appellant's assignments of error in the following order: the second through the sixth, the first, the seventh, and finally the eighth.
 I
{¶ 15} In his second assignment of error, Appellant argues that the trial court erred when it denied his motion for acquittal as there was insufficient evidence to prove the allegations of felonious sexual penetration as alleged in counts nine and ten of the indictment. Specifically, Appellant points out that he was separated from his wife during the times alleged and was living in an apartment by himself. Appellant argues that since his daughter did not testify to being abused at her father's apartment, the state failed to prove counts nine and ten. Appellant argues alternatively that even if the victim did testify to being abused at her father's apartment, the prosecution was confined to prove abuse within the family home as identified in the bill of particulars. We do not find merit in Appellant's arguments.
{¶ 16} Crim.R. 29(A) provides that acquittal should be granted if the evidence is insufficient to sustain a conviction. In reviewing a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Coley (2001), 93 Ohio St.3d 253,754 N.E.2d 11. Here, to prove counts nine and ten of the indictment, the prosecution had to present evidence that between September 1, 1992 and November 1, 1992, Appellant, without any privilege to do so, purposely, by force or threat of force inserted any part of his body in the vaginal cavity of another who was not the spouse and the other was less than 13 years old. See former R.C. 2907.12(A)(2).
{¶ 17} D.D. testified that from 1988 to 1999 she was continuously molested by her father. She described in detail how the abuse began as mere genitalia exposure in grade school and then escalated to sexual intercourse by the time she was in high school. When asked how often the abuse occurred over an eleven-year time span she responded as follows:
{¶ 18} "Most of the time something happened every day, whether it was while I was sitting and doing my homework and he'd come by and grab me or something. I mean, there was something that happened every day."
{¶ 19} D.D. would have been twelve-years old and in junior high during the time frame alleged in counts nine and ten of the indictment. When asked about the periods in which her parents separated, D.D. testified to remembering separations, but could not recall dates. Thereafter, when asked if anything changed as far as the type of abuse that was occurring, D.D. stated that the abuse became more serious as she got older and that by junior high he was penetrating her vagina with his fingers and mouth. Later, when asked if the abuse ever occurred outside the family home, the victim responded affirmatively and testified to being abused "in the car if we were on the way to the grocery store. Outside, like behind the barn. On vacations sometimes."
{¶ 20} Additionally, D.D.'s mother testified that during the periods in which she was separated from Appellant, she would drop D.D. off at his apartment for visits and that Appellant would occasionally visit the family home. Viewing this evidence in a light most favorable to the prosecution, we find sufficient evidence such that any rational trier of fact could have found that Appellant committed felonious sexual penetration with his daughter during the time he was separated from his wife.
{¶ 21} Appellant next argues that even if sufficient evidence existed with regards to counts nine and ten, the prosecution was confined to proving abuse in the family home as stated in the bill of particulars. Contrary to what Appellant argues, "the purpose for giving a bill of particulars is `to elucidate or particularize the conduct of the accused,' but not `to provide the accused with specifications of evidence or to serve as a substitute for discovery." State v. Avery (1998),126 Ohio App.3d 36, 709 N.E.2d 875, quoting State v. Lawrinson (1990),49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262. Furthermore, "a certain degree of inexactitude in averments is not necessarily fatal to a prosecution in cases dealing with sex offenses against victims of tender years." State v. Lawrinson (1990),
49 Ohio St.3d at 239.
{¶ 22} Even if we were to find that the bill of particulars was not as specific with respect to locations as it should have been, the Appellant fails to show prejudice. Both the indictment and the bill of particulars give specific dates such that at all times Appellant had the ability to defend himself from the allegations of abuse. Appellant was aware that he lived outside the family home during the periods articulated in counts nine and ten and could have requested a more specific bill of particulars with respect to locations. Appellant had the opportunity to cross-examine D.D. regarding the specific locations of her alleged abuse. Furthermore, during closing arguments, Appellant's trial counsel pointed out to the jury that the Appellant lived in an apartment and that the victim never specifically identified the apartment as a location of abuse. Clearly, Appellant was not harmed by any inconsistencies in the bill of particulars or the indictment. Accordingly, Appellant's second assignment of error is overruled.
 II
{¶ 23} In his third assignment of error, Appellant argues that the trial court erred in denying his motion for acquittal as to count seventeen of the indictment because there was insufficient evidence to prove that he raped his daughter during the dates alleged. Count seventeen alleges that sometime between November 1, 1998 and December 15, 1998, Appellant raped his daughter in violation of R.C. 2907.02(A)(2), which provides that no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
{¶ 24} D.D. testified that in the Fall of 1998, during her first quarter of college at The Ohio State University, Lima Campus, she lived in Lima with her father's sister. D.D., in a written statement to Police entered into evidence at trial, stated that during her first term of college, she would return home approximately every other weekend. The living arrangement with her aunt was ultimately deemed unsuitable for all parties and therefore, D.D. moved back into the family home sometime around "Christmastime" or near the end of the first term. D.D.'s mother testified that her daughter returned to the family home in Bellefontaine some time near the end of fall quarter or before Christmas. D.D.'s statements to police reveal that once back in Bellefontaine, while talking to Josh McKinley on the phone, she became upset. This conversation ultimately lead to D.D. confiding the details of her abuse. Finally, as previously pointed out, D.D. testified that from 1988 to 1999, she was continuously molested by her father. She described in great detail the methods by which her father would compel her to have oral and vaginal sexual intercourse with him.
{¶ 25} Viewing this evidence in a light most favorable to the prosecution, we find sufficient evidence such that any rational trier of fact could have found that the Appellant raped his daughter during the time periods alleged in count seventeen. Accordingly, Appellant's third assignment of error is overruled.
 III
{¶ 26} In his fourth assignment of error, Appellant avers that the trial court erred in denying his motion for acquittal because there was insufficient evidence of rape as alleged in counts thirteen through seventeen of the indictment, specifically because there was no proof of force. Again, we find Appellant's argument to be without merit.
{¶ 27} In Appellant's first appeal, State v. Geboy,145 Ohio App.3d 706, 764 N.E.2d 451 (Geboy I), we upheld Appellant's rape convictions based on evidence that D.D. was afraid of her father and that he would sometimes drag her by the arm, push her up the stairs, or force himself on top of her just prior to the commission of the offenses alleged. We also noted that Appellant would repeatedly tell her that if she confessed to anyone about the abuse she would cause a breakup of the family and her mother would commit suicide from the resulting emotional distress. Appellant now argues in this second appeal, that during the second trial D.D. did not testify to incidents where her father would drag her, push her or force himself on top of her. Thus, Appellant argues that force has not been established.
{¶ 28} Appellant's argument ignores the foundation of our finding in Geboy I which was as follows:
{¶ 29} "[W]ith respect to the rape of a minor, it has been held that the statute requires only minimal force or threat of force and that when a parent sexually abuses his child, force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." State v. Eskridge (1988),38 Ohio St.3d 56, 58-59, 526 N.E.2d 304. Eskridge was subsequently distinguished by the court when it held that in the case of an adult victim, regardless of the existence of a parent-child relationship, "a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." State v. Schaim (1992),65 Ohio St.3d 51, 600 N.E.2d 661, paragraph one of the syllabus. That is, if the victim has reached the age of majority, the state must present evidence that the defendant "[used] physical force against that person, or [created] the belief that physical force will be used if the victim [did] not submit." Id.
{¶ 30} D.D. was sixteen, seventeen and eighteen-years-old during the periods alleged in counts thirteen through seventeen of the indictment. D.D. testified that her father began exposing himself to her, touching her, and performing sex acts on her when she was eight years old. D.D. testified that she was made to believe this conduct was normal, that if she told anyone her mother would kill herself and the family would be destroyed. And yet, sometimes the Appellant would tell the victim that he loved her and that he would try to stop. D.D. further testified that, "He would ask me if I wanted him to stop, and I would of course, say yes, until I realized that if I said yes then I would get in trouble and he would tell me that I wasn't old enough to decide if I wanted him to stop or not and that I would continue to do it until he felt I was old enough."
{¶ 31} When the prosecution asked D.D. if her father threatened her, the following dialog took place:
{¶ 32} D.D.: He would tell me I wasn't allowed to do things with my friend, or he would just yell at me and-
{¶ 33} Prosecutor: Can you continue?
{¶ 34} D.D.: Yes
{¶ 35} Prosecutor: Okay.
{¶ 36} D.D.: He would make me go to my room. He would — I mean, it was just basically an intimidation thing.
{¶ 37} Additionally, when asked if there were times when marks were left on her body, DD stated, "There was once I had a bruise on my arm from where he grabbed me, but most of the time he was really careful about it."
{¶ 38} Based on the aforementioned evidence, we find that even without testimony regarding dragging and pushing, we find sufficient evidence to demonstrate the minimal amount of force necessary to show forcible rape in this instance. Accordingly, Appellant's fifth assignment of error is overruled.
 IV
{¶ 39} In his fifth assignment of error, Appellant argues that he was denied a fair trial due to the ineffective assistance of his trial counsel. Appellant first contends that his trial counsel should have objected to the state's witness, Andrew Stoner, a family and marriage counselor, on grounds that his testimony was more prejudicial than probative rather than the chosen objection of hearsay. Next, Appellant avers that his trial counsel should have objected to comments made during the state's closing arguments regarding the veracity of D.D.'s testimony. We note that Appellant does not raise individual assignments directly challenging these alleged errors in the trial.
{¶ 40} Even assuming, arguendo, that the incidents pointed out by Appellant were error and that his trial counsel should have registered objections to these errors, Appellant was not denied effective assistance of counsel. It is well established that the constitution does not guarantee a perfect trial or even the best available defense. The Sixth Amendment guarantee of effective assistance of counsel requires only that defense counsel perform at least as well as an attorney with ordinary training and skill in criminal law. State v. Hamblin (1988),37 Ohio St.3d 153, 155-56. Reversal of convictions on ineffective assistance of counsel requires the defendant to show "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." State v. Cassano (2002), 96 Ohio St.3d 94, 2002-Ohio-3751,772 N.E.2d 81, ¶ 105, citing Strickland v. Washington (1984),466 U.S. 668, 669, 104 S.Ct. 2052. Upon review, an appellate court must make a strong presumption that counsel's conduct was within the acceptable range of reasonable professional assistance. Id. at ¶ 108.
{¶ 41} Looking at the trial as a whole, we are unable to find that the defense counsel's performance deprived Appellant of a fair trial. First of all, with regard to the witness Andrew Stoner, Appellant's trial counsel lodged numerous objections to the relevance and admissibility of his testimony. Furthermore, Appellant's trial counsel fully cross-examined Stoner attacking his education, experience and certifications. Defense counsel spent a great deal of time impeaching the methods and materials used by Stoner. It appears from the record that tearing apart Stoner's testimony was part of the defense counsel's strategy to show that D.D.'s memories of abuse were the results of suggestion rather than memory.
{¶ 42} With regard to an alleged failure to object to prosecutorial misconduct, "the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." State v. Hanna (2002), 95 Ohio St.3d 285; quoting State v. Fears (1999),86 Ohio St.3d 329; see, also, State v. Hartman (2001), 93 Ohio St.3d 274,300. Here, even if Appellant's counsel should have objected to certain statements made during the prosecution's closing, the defense counsel neutralized any prejudicial effects with a compelling closing argument attacking the state's evidence and lack thereof. Defense counsel explained to the jury that it was unnecessary to prove why D.D. was falsely accusing her father and then went a step further, likening the victim's accusations to the Salem Witch Trials. Thereafter, the court gave the jury detailed instructions regarding the burden of proof and the non-evidentiary nature of closing statements. A jury is presumed to follow the instructions given by the trial judge. State v. Stallings (2000), 89 Ohio St.3d 280, 286; State v. Loza (1994), 71 Ohio St.3d 61, 79.
{¶ 43} The record is replete with illustrations of the zealous manner with which Appellant's counsel went about providing him a defense. Thus, we are unable to conclude that the failure to raise an objection on the proper grounds and the failure to object to allegedly improper statements deprived Appellant of a fair trial. Accordingly, Appellant's fifth assignment of error is overruled.
 V
{¶ 44} Appellant's sixth assignment of error states that he was denied due process, a fair trial and his right of confrontation when the trial court admitted State's Exhibit 6 into evidence. The document in question consisted of a time-line depicting D.D.'s age and school grade level along with the corresponding year. During her direct testimony, D.D. used the chart to refresh her memory and D.D. acknowledged that the prosecution created Exhibit 6 with information she provided.
{¶ 45} In addition to the time-line, the document also contained the following illustrative notations written by the prosecutor in the prosecutor's own hand:
{¶ 46} — "Elem. Abuse starts. Contact-Almost daily, USU. In mornings, mostly psych. Force, she'd cry +push + he'd quit for awhile."
{¶ 47} — "Middle School. Dad starts yelling a lot/gets physical, contact conduct-digital penetration. Phy+pscye force."
{¶ 48} — "H.S. Years. Oral sex 2-3x/wk. Intercourse-sometimes weekly; sometimes monthly. Phys+psych force"
{¶ 49} — "College. Sept `98. 18. Oral sex 2-3x contact 1-2x Jan `99-June `99 little contact, she didn't go home."
{¶ 50} — "June 1, `99, goes home from OSU for summer, starts getting physical (contact) threatening."
{¶ 51} At the close of the state's case, the prosecutor proffered Exhibit 6 for admission into evidence so that the jury might have use of the time line. The defense objected to the admission as the document was never provided to them and was furthermore hearsay. Thereafter, the prosecutor admitted to the court that the commentary was written by the state, though it was based on information provided by D.D. The defense continued to object. Instead of offering an exception to the hearsay rule, the prosecutor asked the court if rather than admitting Exhibit 6 into evidence, she could merely refer to it during her closing arguments. The trial court ignored the prosecutor's request and admitted Exhibit 6 into evidence over Appellant's objections, reasoning that the chart would assist the jury with the complex time span. Additionally, the trial court made a determination that the prosecutor's written comments were not harmfully prejudicial to the Appellant. Appellant now argues that the comments constitute inadmissible hearsay and did in fact prejudice the Appellant by denying his constitutional right to confront the declarant, thereby denying him a fair trial. We agree in part and disagree in part.
{¶ 52} An appellate court reviews a decision on the admissibility of evidence on an abuse of discretion standard. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Thus, we are obliged to affirm an evidentiary ruling unless we find that the trial court has abused its discretion. The Rules of Evidence prohibit the use of hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C); Evid.R. 802. Hearsay is only admissible if it meets one of the exceptions enumerated in the Rules of Evidence. Id.
{¶ 53} Here, while we would find no error with respect to the timeline depicting the victim's age and school level in relation to the year, we find that the accompanying commentary amounts to double hearsay. The comments were written on Exhibit 6, out of court and by the prosecutor; thus constituting the first layer of hearsay. The prosecutor admitted that her commentary was based on information gleaned from out of court statements made by the victim, bringing us to the second level of hearsay. When it proffered the statements to the trial court, the state did not indicate under which hearsay exception the statements would come in. In fact, rather than dealing with the hearsay problem, the state withdrew its request to admit the evidence, which was nevertheless disregarded by the trial court. Similarly, the state does not now, on appeal, offer an argument as to which hearsay exception Exhibit 6 and the accompanying commentary would come in. We are not inclined to search for such an exception, thus, we find that the trial court abused its discretion when it admitted State's Exhibit 6 into evidence as it contained inadmissible hearsay.
{¶ 54} Even though we conclude the trial court abused its discretion when it admitted Exhibit 6 into evidence, we find the error harmless since Defendant's Exhibits A E, D.D.'s written statements to police, contain the same information but with greater detail than the statements found in the margins of Exhibit 6.
{¶ 55} In her first statement to police, D.D. broke down her allegations by elementary school, middle school and high school; similar to the breakdown on State's Exhibit 6. D.D. wrote that in elementary school she was made to touch her father's penis and that if she refused he would put her hand where he wanted it. She wrote that he would force her to get naked so he could rub himself on her. D.D. wrote that in Middle School he would touch her and "do stuff" everyday. She alleged that he would make her perform oral sex on him, or that he would perform oral sex on her almost two to three times per week. She said he would punish her if she refused and would scream and yell at her. By high school, D.D.'s statements allege that the Appellant was constantly wanting to touch her and to have her touch him. Also in high school, D.D. alleges that her father began having sexual intercourse with her, using condoms, baggies, or saran wrap as contraceptives. D.D. wrote that every time they found themselves alone in a room together, Appellant would make her kiss him.
{¶ 56} Additionally, D.D.'s in court testimony and written statements allege that the appellant would buy D.D. things and then expect sexual acts in return. D.D. stated that her father often felt guilty for what he did and would apologize and promise to stop, only to start abusing her again shortly thereafter. D.D. alleged that her father indicated he'd be willing to participate in a joint suicide with her. Appellant allegedly told D.D. that their relationship was normal, that various other men in their community were having sexual relations with their daughters. In her second statement to police, D.D. wrote that her father would perform oral sex on her and would insist that he knew she enjoyed it, so therefore he would keep doing it until he determined it was time to stop.
{¶ 57} In light of the aforementioned evidence put before the jury, we conclude that the hearsay statements contained in State's Exhibit 6 were cumulative to D.D.'s trial testimony and statements to police. Additionally, we find that Appellant was aware of the nature of D.D.'s accusations and had the opportunity to cross examine her regarding those accusations, to include the accusations found within the commentary on Exhibit 6. See State v. Tomlinson (1986), 33 Ohio App.3d 278, 281,515 N.E.2d 963, 966-967. (Any error in the admission of hearsay is generally harmless when the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature.) Appellant has not demonstrated that his rights have been substantially affected and thus, his sixth assignment of error is overruled.
 VI
{¶ 58} We now turn to Appellant's first assignment of error, in which he claims that his conviction on all eighteen counts is against the manifest weight of the evidence. We do not find Appellant's argument well taken.
{¶ 59} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In reviewing whether the verdict was against the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), Hancock App. No. 5-97-31, 1999 WL 797144 (citing State v. Martin [1983], 20 Ohio App.3d 172, 175, 485 N.E.2d 717; State v. Thompkins [1997], 78 Ohio St.3d 380, 387, 678 N.E.2d 541).
{¶ 60} The relevant question to this end is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Campbell (2000), 90 Ohio St.3d 320, 329,738 N.E.2d 1178 (quoting Jackson v. Virginia [1979], 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560). In making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394 (citing State v. Mattison [1985], 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus). However, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
{¶ 61} After thoroughly reviewing the evidence presented at trial, we are unable to find that reasonable minds could not reach the conclusion reached by the jury. The key factor in this case was credibility; whether or not the jury believed D.D's in court testimony and statements to police. As stated above, if believed, her testimony was sufficient to convict the Appellant for all eighteen counts of the indictment.
{¶ 62} On the issue of D.D.'s credibility, the record does not reveal a significant impeachment through the demonstration of a motive to lie, a history of telling lies, or a history of inconsistent statements regarding the current charges. D.D.s version of events remained generally consistent from the time she made her first statement to police until her direct testimony at trial. Appellant's trial counsel pointed out that D.D., in her second statement to police, added allegations of sexual intercourse and videotapes depicting sexual encounters between Appellant and D.D. However, we do no not find it incredible that a victim of child abuse would be reluctant to discuss the specifics of that abuse, especially in light of the fact D.D. was a reluctant complaining witness from the beginning.
{¶ 63} Nor are we convinced by Appellant's accusations that D.D. was fabricating the abuse because he bought her a "piece of crap" car and objected to her going to Europe to model. Without some showing of severe deviance on D.D's part, these normal teenage gripes are hardly of a such a nature to instigate allegations of this magnitude. Furthermore, D.D., at all times, demonstrated a continued sense of concern for her father and was seemingly empathetic to his "problems" for which she said he needed help. D.D. admitted to the jury that she still loved her father.
{¶ 64} Appellant's entire defense consisted of his assertion that without an eye witness, or physical proof of abuse, D.D.'s word is manifestly inadequate to convict him. The Appellant called a neighbor to testify that she never witnessed abuse. Additionally, Appellant called D.D.'s high school track and field coach, who incidentally could not remember actually ever talking to D.D., and her high school math teacher who both testified that they never had cause to act on their legal obligation to report child abuse. Appellant presented the testimony of Jennifer Zell, D.D's long time childhood companion and friend, who stated that D.D. never confided that her father was sexually abusing her.
{¶ 65} Additionally, Appellant presented testimony from Karol Ross, a family and marriage counselor, who stated that the book, The Courage to Heal[1], relied on by D.D's counselor, Andrew Stoner, was suggestive and unreliable. Next, the Appellant called his niece, Darcy Deters, to the stand who proceeded to tell the jury that she lived with D.D. for a period of time and that D.D. was sloppy and lazy. Additionally, Deters stated that D.D. could not be trusted because of "conflicting stories and just some other situations, stories that she told me that made me feel as though she could be deceitful." Finally, defense counsel called Appellant's brother to the stand who told the jury that his brother was never circumcised. Defense counsel later pointed out that D.D. never indicated that she knew that her father was not circumcised.
{¶ 66} We do not believe that D.D.'s failure to notify people that her father was abusing her, her housekeeping habits, the fact that she read a book written by former victims of child abuse, and her failure to identify her father's penis as being uncircumcised are enough to sway the weight of the evidence towards Appellant's innocence. D.D. did not confide her abuse to anyone, not even her mother or sister. It wasn't until her friend Josh confronted her with his suspicions that she reluctantly D.D. admitted that he was right. Also relevant to her silence is the fact that the Appellant told D.D. that if her mother found out about the abuse, she'd kill herself. D.D. testified that her father also stated that if she told anyone, she would ruin the family and hurt people.
{¶ 67} The absence of eye witnesses is also reasonable. People do not commit child molestation in front of witnesses. They do it behind closed doors or in places no one is sure to see. The book Appellant complains of, The Courage to Heal, was given to D.D. after she made her first statement to police. What's more, D.D. testified that she did not read the book until after she gave her second statement to police. Finally, Appellant's uncircumcised penis is immaterial. Neither the police, the prosecution, nor the defense asked D.D. to describe her father's penis or other body parts. It is unclear from the record whether or not D.D. knew the difference between a circumcised penis and an uncircumcised penis. We do not find such ignorance unreasonable in a young girl.
{¶ 68} In light of the aforementioned evidence, we are unable to conclude that the jury lost its way in determining the credible nature of the evidence put before it. As the thirteenth juror, this court finds D.D's allegations credible and supported by other factors in the record. Thus, Appellant's conviction is in accord with the manifest weight of the evidence and his first assignment of error is overruled.
 VII
{¶ 69} In his seventh assignment of error, Appellant argues that the trial court plainly erred in failing to make and support the requisite statutory findings before imposing consecutive sentences for the five rape charges. We agree.
{¶ 70} Recently, in State v. Schmidt, Mercer App. No. 10-01-10, 2002-Ohio-490 we determined that under Ohio felony sentencing law, a trial court must make specific findings on the record prior to sentencing a defendant to consecutive sentences in accordance with R.C. 2929.14(E). Additionally, the trial court must comply with R.C. 2929.19(B)(2)(c), which states:
{¶ 71} "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."
{¶ 72} In Schmidt, we also pointed out the difference between making a finding on the record and giving reasons for imposing a certain sentence. "Finds on the record" merely means that a trial court must specify which statutorily sanctioned ground it has relied upon in deciding to impose a particular sentence. On the other hand, when a statute further requires the court to provide its reasons for imposing a sentence, as in the case of a maximum term or consecutive sentences, the court must make the applicable findings and then provide a factual explanation setting forth the basis for those findings. Id, citing State v. Edmonson (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131. See, also, State v. Jones, 93 Ohio St.3d at 399, 754 N.E.2d 1252. Failure to sufficiently state these reasons on the record constitutes reversible error and requires a remand of matter for sentencing. State v. Gary (2001), 141 Ohio App.3d 194, 196, 750 N.E.2d 640; State v. Martin (2000), 140 Ohio App.3d 326, 334, 747 N.E.2d 318.
{¶ 73} Here, the transcript of the sentencing hearing reveals that the trial court made the requisite findings but failed to put its reasoning on the record. Thus, Appellant's seventh assignment of error is sustained.
 Eighth Assignment of Error
{¶ 74} In his eighth and final assignment of error, Appellant contends that the trial court's April 19, 2002 judgment entry of sentencing improperly sentences him to two life sentences for counts eleven and twelve of the indictment for which he was found not guilty. Appellant's argument has no merit.
{¶ 75} The judgment entry of sentencing orders that the appellant serve two consecutive life sentences on two counts of felonious sexual penetration. Appellant was indeed convicted on two counts of felonious sexual penetration. Appellant seems to find fault with the trial court for not explicitly stating the specific counts of the indictment for which the life sentences were being rendered. We find no prejudice. Appellant's convictions on counts nine and ten and the acquittals on counts eleven and twelve are clearly detailed in the judgment entry of conviction dated March 28, 2002. Appellant's contention that he was sentenced for a crime for which he was found not guilty is preposterous and thus, his eighth assignment of error is overruled.
{¶ 76} For the reasons stated it is the order of this Court that the judgments of the Court of Common Pleas, Union County is AFFIRMED in part, REVERSED in part, and REMANDED to that court for new sentencing in accordance with this opinion.
Judgment affirmed in part and reversed in part.
SHAW, P.J. and WALTERS, J., concur.
[1] The Courage to Heal, Helen Bass and Laura Davis, Harpers Collins Publishers, Inc., New York, NY, 1998.