JOURNAL ENTRY AND OPINION
{¶ 1} Phillip Fentress appeals his conviction and sentence on two counts of rape following a bench trial. He contends that there is insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. He additionally claims error in the imposition of nonminimum sentences in violation of Blakelyv. Washington. (Citation omitted.) We affirm.
 {¶ 2} The record reveals that in mid to late August 2003, eleven-year-old E.M.[1] rode her bike to the playground of Mary Bethune elementary school where she was a student. At the time, E.M. was about to begin the sixth grade and would be attending special classes because of difficulties with school. At the playground, she met a man she identified only as "Phil." She spoke with him briefly and then left with him for his aunt's house on East 120th Street.
 {¶ 3} After listening to music and talking with Phil's cousin, Lloyd, for approximately a half-hour, E.M. and Phil left to sit in his car. Phil climbed into the back seat with E.M. and began kissing her. He then asked her to remove her clothing, which she did. Phil then removed his pants and had intercourse with her. Afterward, they fell asleep and stayed in the car all night. When her daughter failed to return, Lorist Murrell called the police to report E.M. as missing and waited at home for her daughter.
 {¶ 4} Early the next morning, E.M. returned home dirty and blood-stained. She told her mother that she was with "Phil" all night, and then went upstairs to bathe. When she returned, E.M. told her mother that she had sex with Phil. Lorist then called the police to report that her daughter had returned, but mentioned nothing further.
 {¶ 5} Following her mother's urging, at approximately 9:00 a.m. that morning, E.M. took her mother and her sister to the house on East 120th Street, where she had been the previous night. The home's owner, Jacqueline Hoyle, who is also Fentress' aunt, immediately called Phil's mother, Gwen Fentress, to her home. Following a brief discussion with E.M. and Ms. Murrell, Ms. Fentress indicated that she would help pay the medical bill if the family took E.M. to the doctor to find out "if she could be pregnant or anything." (Tr. at 181.)
 {¶ 6} In late September 2003, Sonnia Ramsey-Draper, an investigator/social worker in the sex abuse department of Children and Family Services, was called to interview E.M. Following E.M.'s description of the rape using anatomically correct dolls, Ms. Ramsey-Draper notified the Cleveland Police Department of the allegations. On October 9, 2003, Officers Erin O'Donnell and William Feador went to the Mary Bethune School to speak with E.M.
 {¶ 7} The officers interviewed E.M., and she directed them to the house on East 120th Street where the incident occurred. The officers then returned E.M. to school and went back to the house to investigate. The officers found a man matching E.M.'s description, but when they approached him, he ran into the house and hid in the basement. He was later identified as Phil's cousin, Lloyd. Ms. Hoyle, then advised the officers that they were probably looking for Phillip Fentress, who looked similar to her son.
 {¶ 8} In October 2003, Fentress was indicted on four counts of rape, in violation of R.C. 2907.02, and one count of kidnapping, in violation of R.C. 2905.01, with a sexual motivation specification under R.C.2941.147. One month later, Fentress was referred to the Court Psychiatric Clinic for a sanity and competency evaluation. He was found incompetent to stand trial, and was sent to Northcoast Behavioral Healthcare System to be restored to competency.
 {¶ 9} In June 2004, both Fentress and the State stipulated to the Court Psychiatrist's report that he had been returned to competency. Fentress was then referred for a second competency and sanity evaluation.
 {¶ 10} In November 2004, the case proceeded to a bench trial. At the close of the State's case, Fentress moved for a Crim.R. 29 motion for acquittal, which the court granted as to the sole count of kidnapping. The State then dismissed counts two and four.
 {¶ 11} Following trial, Fentress was found guilty of two counts of rape and was sentenced to a seven-year prison term on each count, sentences to run concurrent. The trial court additionally imposed post-release control and found Fentress to be a sexually oriented offender. Fentress appeals from this sentence in the assignments of error set forth in the appendix to this opinion.
 {¶ 12} In his first and second assignments of error, Fentress claims the evidence was insufficient to support a conviction and that his convictions are against the manifest weight of the evidence.
 {¶ 13} A sufficiency claim raises a question of law that we review de novo to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Stallings, 89 Ohio St.3d 280, 289, 2000-Ohio-164, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319; See, also, Statev. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. In contrast, the purpose of manifest weight review is to determine "whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy, 84 Ohio St.3d 180, 193,1998-Ohio-533.
Instead of looking for merely sufficient evidence, manifest weight review tests whether the verdict is supported by substantial evidence. Id. Although the scope of review broadens, the standard of review is more deferential. Under the manifest weight test, a new trial should not be ordered unless the evidence weighs so heavily against conviction that the verdict appears unjust. State v. Lindsey, 87 Ohio St.3d 479, 483,2000-Ohio-465.
 {¶ 14} R.C. 2907.02 defines rape as:
"(A) (1) No person shall engage in sexual conduct with anotherwho is not the spouse of the offender or who is the spouse of theoffender but is living separate and apart from the offender, whenany of the following applies: * * *
 (b) The other person is less than thirteen years of age, whether or notthe offender knows the age of the other person. (c) The other person'sability to resist or consent is substantially impaired because of amental or physical condition or because of advanced age, and the offenderknows or has reasonable cause to believe that the other person's abilityto resist or consent is substantially impaired because of a mental orphysical condition or because of advanced age."
 {¶ 15} E.M. testified that her date of birth was April 19, 1992, and that she was eleven years old at the time of the incident. She further testified that she attended special classes because of difficulties with school — a fact attested to by E.M.'s mother, Officer O'Donnell and Ms. Ramsey-Draper. (Tr. at 21, 103, 116-117, 147.)
 {¶ 16} She further identified the man who raped her as "Phil" and described the tattoo on his arm that bore his name. (Tr. at 36.) She then identified the car where the act occurred as a red Cadillac with a "for sale" sign in the window. Officer O'Donnell supported E.M.'s testimony and stated that when she investigated E.M.'s allegations, she discovered a red car on East 120th Street with a "for sale" sign in the window. (Tr. at 106.) While Fentress' car is admittedly a red Buick Regal, a distinction perhaps not apparent to most children, Fentress himself confirmed that he did, in fact, have a "for sale" sign in the window of his car. (Tr. at 200-201.)
 {¶ 17} When asked to describe the incident itself, E.M. testified that Fentress put his private part inside her private part, which was located between her legs. (Tr. at 44.) She testified that the contact hurt and that she told Fentress to stop, to which he responded, "we be done in a minute." (Tr. at 44-45.) She also told Ms. Ramsey-Draper that Fentress put his thing inside her and moved up-and-down and side-to-side, also using anatomically correct dolls to describe the act. (Tr. at 150.)
 {¶ 18} Fentress claims that the State has failed to establish that he engaged in sexual contact with E.M. on the precise date of August 17, since both E.M. and her mother claim that the rape occurred on August 22 or 23. He further claims that E.M.'s testimony was scattered, inconsistent, and coached, and indicates several portions of the transcript.
 {¶ 19} First, we note that multiple portions of testimony support the contention that E.M. is developmentally delayed and has the mental abilities of a third grade student. It is unquestionable that such delays might make her testimony appear "scattered," however, we find no portions of the record which indicate that E.M. was inconsistent in her testimony that she had sexual intercourse with "Phil," and that she asked him to stop. We further note that despite her developmental delays, E.M. was able to take both her mother and the police officers to the precise location on East 120th Street where she had been the night of the incident.
 {¶ 20} With regard to the date of the allegedly "imprecise" date of the incident, R.C. 2941.08, entitled, "Certain defects do not render an indictment invalid," states:
"An indictment or information is not made invalid, and the trial,judgment, or other proceedings stayed, arrested, or affected:
 "(A) By the omission of "with force and arms," or words of similarimport, or "as appears by the record"; (B) For omitting to state the timeat which the offense was committed, in a case in which time is not of theessence of the offense; (C) For stating the time imperfectly; (D) Forstating imperfectly the means by which the offense was committed exceptinsofar as means is an element of the offense;
* * *
(F) For the want of an allegation of the time or place of a materialfact when the time and place have been once stated therein; * * *
 (I) For surplusage or repugnant allegations when there is sufficientmatter alleged to indicate the crime and person charged; (J) For want ofaverment of matter not necessary to be proved; (K) For other defects orimperfections which do not tend to prejudice the substantial rights ofthe defendant upon the merits."
 {¶ 21} Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged. State v.Madden (1984), 15 Ohio App.3d 130, 131, citing Tesca v. State
(1923), 108 Ohio St. 287; State v. Dingus (1970), 26 Ohio App.2d 131, affirmed (1971), 26 Ohio St. 2d 141. See also State v. Gingell (1982),7 Ohio App.3d 364, State v. Ambrosia (1990), 67 Ohio App.3d 552.
 {¶ 22} Although Fentress also argues that the evidence was insufficient because it lacked supporting corroboration in the form of medical evidence or DNA evidence, such evidence is not statutorily required. Likewise, the absence of such evidence is not an indication that the act(s) did not occur.
 {¶ 23} We find that Fentress' conviction was supported by sufficient evidence and was not against the manifest weight of the evidence.
 {¶ 24} Fentress' first and second assignments of error lack merit.
 {¶ 25} In his final assignment of error, Fentress claims error in the trial court's imposition of more than the minimum, concurrent sentence. He asserts that such an imposition violates both R.C. 2929.14 and Blakelyv. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531.
 {¶ 26} Rape is a felony of the first degree under R.C. 2907.02(B), and is punishable by a mandatory prison term of three to ten years. R.C.2929.13(F)(2), R.C. 2929.14(A)(2).
 {¶ 27} Under R.C. 2929.14(B), the court is required to make the following findings:
"(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3),(D)(5), (D)(6), or (G) of this section, in section 2907.02 of the RevisedCode, or in Chapter 2925. of the Revised Code, if the court imposing asentence upon an offender for a felony elects or is required to impose aprison term on the offender, the court shall impose the shortest prisonterm authorized for the offense pursuant to division (A) of thissection, unless one or more of the following applies: (1) The offenderwas serving a prison term at the time of the offense, or the offenderpreviously had served a prison term. (2) The court finds on the recordthat the shortest prison term will demean the seriousness of theoffender's conduct or will not adequately protect the public from futurecrime by the offender or others."
 {¶ 28} Under R.C. 2929.14(B), where an offender has not previously served a prison term, absent a finding that the imposition of the shortest prison term authorized for the offense would demean the seriousness of his offense or would not adequately protect the public from future crime by the offender or others, a judge shall impose the shortest prison term authorized by law. "By its very nature, R.C.2929.14(B) must be addressed for that limited and unique number of offenders who are sentenced to more than the minimum term of initial imprisonment * * *." State v. Halmi (Aug. 16, 2001), Cuyahoga App. No. 78485.
 {¶ 29} In order to justify imposing more than a minimum term of incarceration on an offender who had never been previously incarcerated, the record must reflect that the judge first considered imposing the minimum term and then departed from 2929.14(B)'s presumption for one of the two permitted reasons. State v. Jones, 93 Ohio St.3d 391, 398,2001-Ohio-1341. Before imposing sentence, the trial court made the following findings:
"The Court finds that you have failed even to this day to takeresponsibility for your actions. You have testified before this court to— and to the police and to the probation officer all in a manner so as toplace the blame for this crime on someone else, yet you seem to be veryunclear about that as well.
 Also, the Court notes that in spite of your — whatever mentaldisabilities that you have, the Court notes that you have at varioustimes attempted to give false urines to our lab which further point toyour lack of character for veracity, and this Court has had to retain youin the custody of the county sheriff on numerous times for failing to becompliant with the medications or appointments.
 And the record is quite replete with your inability or lack of desire,one or the other, to comport with the procedures and the rules trying toget this case to trial, which would tell this Court that the minimumsentence would not be a proper sentence in this case and would demean theseriousness of the offense, and it would not protect the public becauseyour lack of veracity goes far beyond just the facts of this case butalso with your lack of compliance, with your lack of submitting urineswhen told to, and when attempting to submit a false urine as well." (Tr.at 236-237.)
 {¶ 30} It is clear from the record that the trial court adequately addressed R.C. 2929.14(B) before imposing more than the minimum sentence.
 {¶ 31} Fentress additionally argues that Blakely, supra, requires that a jury make the required findings regarding his sentence. We have recently addressed this issue in this court's en banc decision of Statev. Atkins-Boozer, Cuyahoga App. No. 84151, 2005-Ohio-2666. In that case, we found that the imposition of nonminimum sentences on first-time offenders does not implicate the Sixth Amendment as construed inBlakely.
 {¶ 32} Fentress' third assignment of error lacks merit.
Judgment Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Corrigan, J., concur.
 APPENDIX A ASSIGNMENTS OF ERROR:
 "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAINAPPELLANT'S CONVICTION. II. THE APPELLANT'S CONVICTIONS ARE AGAINST THEMANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN IMPOSING MORE THAN THE MINIMUM CONCURRENTSENTENCE IN VIOLATION OF OHIO REV. CODE CHAPTER 2929, AND IN VIOLATION OFTHE FIFTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTIONAND ARTICLE ONE SECTION 16 OF THE OHIO CONSTITUTION."
[1] This court protects the identity of all juvenile parties.