[Cite as *State v. Perry*, 2014-Ohio-4732.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                     Court of Appeals No. H-12-020

    Appellee                                Trial Court No. CRI-2011-1017

v.

James C. Perry, Jr.                               **DECISION AND JUDGMENT**

    Appellant                               Decided:  October 24, 2014

* * * * *

Russell V. Leffler, Huron County Prosecuting Attorney, and
Jennifer L. DeLand, Assistant Prosecuting Attorney, for appellee.

Nancy L. Jennings, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from a judgment of conviction and sentence of life imprisonment entered by the Huron County Court of Common Pleas after a jury found defendant-appellant, James C. Perry, Jr., guilty of one count of rape.  Appellant now challenges that judgment through the following assignments of error:

I. Appellant's conviction for rape in violations of Ohio Rev. Code § 2907.02(A)(1)(b) was against the manifest weight of the evidence.

II. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state of Ohio failed to present evidence to establish beyond a reasonable doubt the elements necessary to support the conviction.

III. Appellant's convictions [sic] were against the sufficiency of the evidence.

IV. Defendant's indictment was fataly [sic] flawed.

V. Appellant was denied his Sixth Amendment right guaranteed by the United States Constitution by being denied effective assistance of counsel.

{¶ 2} On December 16, 2011, appellant was indicted and charged with six counts of rape in violation of R.C. 2907.02(A)(1)(b). All of the counts in the indictment charged that appellant unlawfully engaged in sexual conduct with another who is not his spouse and that the victim was under 13 years of age. The indictment charged that the offenses occurred on or about October 7, 2011 (Count 1), during the month of September 2011 (Count 2), during the month of August 2011 (Count 3), during the month of July 2011 (Count 4), during the month of June 2011 (Count 5), and during the month of July 2010 (Count 6). The indictment was filed as a result of the following facts, which were testified to at the trial below.

2.

**{¶ 3}** In January 2009, J.P. began dating appellant. Soon thereafter, appellant moved into J.P.'s home in Huron County with her and her four children, including her daughters S. and K. During the time that appellant lived in J.P.'s home, he often cared for her children when she was at work. On the evening of October 12, 2011, J.P. was watching TV in her bedroom on the first floor of the home when she heard appellant walk up stairs to the second floor. J.P. presumed that appellant was headed to the only working bathroom in the house. After approximately 15 minutes, appellant did not return and J.P. became concerned. She then walked up the stairs and as she looked into her daughter S.'s room, she saw appellant roll off of the bed and heard his belt buckle clink. At that time, S. was 10 years old. J.P. then saw that appellant's pants were unbuttoned and his zipper was down. When J.P. asked appellant what he was doing, he said he needed to talk to her. J.P. screamed at appellant to leave the home and then brought S. into the bathroom. J.P. asked S. if appellant had touched her or done anything to her. S. responded that he had not, but J.P. asked to see S.'s underwear. J.P. found a wet line in S.'s underwear and again asked her what had happened. S. started crying and curled up on the bathroom floor. J.P. then told her to go back to bed. When J.P. came downstairs, appellant was still in the house and wanted to talk to her. Appellant admitted that he sometimes gets aroused when he is around the girls but denied that he had touched them or that anything had happened. J.P. then told appellant to leave.

**{¶ 4}** After appellant left the home, J.P. telephoned the police. The next morning, J.P. took her two daughters, S. and K., who was then eight years old, to the Med Central

3.

Hospital for an examination by sexual assault nurse examiner ("SANE" nurse), Tammy Lawhorn. Lawhorn examined each girl independently, without J.P. or the other girl present, and completed rape kits for each girl. As part of her medical diagnosis and treatment, Lawhorn attempted to obtain statements from the girls. S. was withdrawn and crying at the time and would not give Lawhorn a verbal statement. She did, however, provide a written statement which reads: "He kisses me there. He puts his you know inside me. I am guessing my sister told you that. I will not write anymore or say anymore! I promise that!" The physical exam of S. did not reveal evidence of trauma.

{¶ 5} Lawhorn described K. as much more talkative during her examination of her. That exam revealed redness to the labia majora, vaginal vault, hymen, and groin. In addition, K. gave a verbal statement to Lawhorn, which Lawhorn included in the narrative history portion of K.'s medical record as follows:

Pt states "my mom's boyfriend (James Perry) kisses my ear & my private area (clarified as vagina). He uses his fingers & swirls around in my private area (clarified as vagina). If he puts his finger gets into [sic] deep it hurts. He keeps doing it to my sister everyday [sic]. He puts his private area (clarified as a wiener) inside my private and to my sister, mostly my sister." Child reports last incident 1 wk ago and happens in "2 bathrooms, my bedroom, living room, dining room, on couch, mom's bed, kitchen too, brothers room & dogs place." Reports "when he first got in house, 2 days after he started doing this."

{¶ 6} Following the examinations of the girls, the rape kits were sent to the Ohio Bureau of Criminal Investigation ("BCI"). The rape kit for S. included the underwear she wore the night before. Julie Cox from BCI processed the rape kits and examined the evidence for the presence of biological fluids. While she found no evidence of semen from the vaginal, anal and oral swabs taken from S. and K., Cox did find evidence of amylase, a component of saliva, on the underwear worn by S. In addition to the rape kits, Cox examined the quilt from S.'s bed that had been gathered by officers in their investigation of the case. That examination revealed the presence of seminal fluid on the quilt. Despite the negative result from the vaginal swab from S., Cox submitted that swab along with the underwear and quilt cuttings to LabCorp for DNA testing.

{¶ 7} Appellant was subsequently arrested in Tennessee and transported to Huron County. Following his arrest, a DNA sample was collected from appellant and submitted to LabCorp, along with the evidence from BCI. Shawn Weiss, an employee of LabCorp completed DNA testing of the evidence. Both the underwear sample and the vaginal swab from S. contained male DNA that was consistent with appellant or his paternal relatives. Using Y chromosome testing on these samples, Weiss testified that neither appellant nor his male relatives could be excluded as the source of the DNA and that the profile appeared in approximately one in every 2,857 males. Regular nuclear DNA testing was performed on the seminal fluid from the comforter. That test revealed that there was a one in seven billion chance that the seminal fluid was not from appellant.

5.

{¶ 8} In addition to the physical evidence admitted in the trial below, both S. and K. testified. S., who was 10 years old at the time of the trial, testified that on the night her mother walked into her room, appellant was touching her private parts with both his hand and his penis, which she called his "peanut." She stated that both appellant's hand and "peanut" were inside her and that this had happened many times before, usually when her mother was working or out of the house. She also testified that appellant has put his mouth on her private parts, has done so approximately 10 to 15 times, and did so on the night that her mother walked in her room. S. testified that appellant had told her not to tell anyone, and that if she did he would get in big trouble. In identifying the occasions when appellant assaulted her in this way, S. testified that it happened for the one and one-half to two years before her mother caught appellant in her room. On direct examination, S. stated that appellant had touched her in the months leading up to the day her mother walked into her room, which she agreed were June, July, August, and September of 2011. She also specifically remembered that appellant put his "peanut" inside her when the family went on a camping trip. J.P. had previously testified that the family went camping in July 2010.

{¶ 9} At the time of the trial below, K. was 9 years old. Accordingly, the court conducted a hearing outside the presence of the jury to determine if she was competent to testify. Upon questioning by the court, and counsel for both parties, K. demonstrated her competency to testify, and the court found her competent. Appellant did not object.

6.

{¶ 10} On direct examination, K. testified that appellant had touched her private area and put his penis, which K. also called a "peanut," in her mouth. She also stated that he had put his "peanut" inside her butt and her private area and afterward always told her not to tell anyone or he would go to jail. She testified that appellant had done each of these things to her at least 10 times but was not sure if he had done them 20 times, and identified several areas in her home where appellant had assaulted her. She too testified that appellant did these things to her when her mother was at work or watching television, and stated that she had seen appellant do the same things to S., except that she never saw him put his "peanut" in S.'s mouth. K. also stated that at times, appellant used duct tape to hold her down. K. testified that the assaults began shortly after appellant moved into the home and continued off and on until he moved out.

{¶ 11} In addition to the testimony of witnesses, the state submitted evidence in the form of recordings from telephone conversations between appellant and J.P. that had been recorded by police before appellant was arrested and by the jail in Tennessee after appellant was arrested. In the three phone calls between appellant and J.P., appellant made incriminating statements in which he acknowledged he had been aroused by S. and K., and continually apologized to J.P. Finally, a printout of text messages between appellant and J.P. was admitted into evidence. Throughout these messages, appellant apologized to appellant. He also stated "I'm glad its [sic] found out cuz [sic] that makes it impossibale [sic] to ever do again," and "It will never happen again."

7.

{¶ 12} At the conclusion of the state's case, appellant moved for an acquittal pursuant to Crim.R. 29, on the grounds that the state had failed to prove the dates of the alleged crimes. The court denied the motion.

{¶ 13} In his defense, appellant called four witnesses, including J.P.'s parents, who testified that they had never seen any inappropriate behavior between appellant and the girls and that appellant and the girls appeared to have a normal, loving relationship. Appellant then testified in his own defense. Appellant testified that he would occasionally get an erection when wrestling with the girls, and admitted to being aroused when J.P. walked into S.'s room, but denied that he had ever sexually assaulted the girls in any way. He further explained the presence of his seminal fluid on S.'s quilt by testifying that he and J.P. had had sexual relations in many places in the house, including on the girls' beds.

{¶ 14} Appellant renewed his Crim.R. 29 motion at the conclusion of the case. The court again denied the motion. The jury subsequently returned a verdict of guilty on the first count of the indictment, found that both S. and K. were victims of rape, and found that at least one of the victims was ten years of age or younger at the time of the offense. The jury then returned verdicts of not guilty on the remaining five counts of the indictment. Thereafter, the court sentenced appellant to a term of life in prison without the possibility of parole.

{¶ 15} We will first address the fourth assignment of error, in which appellant contends that the indictment under which he was charged, was fatally flawed in that it

8.

failed to state a name or age of the victims or the date or range of dates for the offenses. Because appellant was acquitted of five of the six counts in the indictment, we will limit our discussion to Count I, the only offense for which appellant was convicted.

{¶ 16} We first note that appellant did not move to dismiss the indictment in the proceedings below. Crim.R. 12(C)(2) provides that defenses and objections based on defects in the indictment must be raised prior to trial. Failure to raise these issues before trial results in a waiver of these defenses and objections. Crim.R. 12(H). Crim.R. 12(C)(2) further states, however, that defenses and objections which assert a failure to show jurisdiction or to charge an offense shall be noticed by the court at any time in the proceeding. Because appellant asserts that the indictment failed to charge an offense, we will review the merits of the assignment of error.

{¶ 17} Relevant to this appeal, R.C. 2941.03 provides that "[a]n indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of finding of the indictment or filing of the information." Each count of the indictment must contain "a statement that the accused has committed some public offense therein specified." R.C. 2941.05. That statement "may be made in ordinary and concise language * * * [or] in the words of the section of the Revised Code describing the offense * * * or in any words sufficient to give the accused notice of the offense of which he is charged." *Id. See also* Crim.R. 7. An indictment is not made invalid "[f]or omitting to state the time at which the offense was committed, in a case in which time is not of the essence of the offense; [or] [f]or stating

9.

the time imperfectly." R.C. 2941.08(B) and (C). "Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged." *State v. Fentress*, 8th Dist. Cuyahoga No. 85835, 2005-Ohio-5851, ¶ 21.

{¶ 18} Count 1 of the indictment charged appellant with rape in violation of R.C. 2907.02(A)(1)(b), as follows:

> THE JURORS OF THE GRAND JURY of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that on or about the 7th day of October, 2011, as a continuing course of criminal conduct, at Huron County, Ohio, James C. Perry, Jr. * * * unlawfully did engage in sexual conduct with another who is not the spouse of the offender when the other person is less than thirteen years of age whether or not the offender knows the age of the other person, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, Rape, (a felony of the first degree) contrary to the statute in such cases made and provided and against the peace and dignity of the State of Ohio.

10.

**{¶ 19}** R.C. 2907.02(A)(1)(b) reads:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶ 20}** Accordingly, neither the name of the victim nor the date of the offense are elements of the crime of rape as charged under R.C. 2907.02(A)(1)(b). Irrespective of that conclusion, the indictment in the present case charged that the offense occurred on or about October 7, 2011. There is nothing flawed about the indictment and the fourth assignment of error is not well-taken.

**{¶ 21}** Appellant's second and third assignments of error will be discussed together as they both assert that there was insufficient evidence to support appellant's conviction.

**{¶ 22}** Crim.R. 29 (A) provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. Appellant asserts that the trial court erred in denying his motion for acquittal and that the evidence at the trial was insufficient as a matter of law to support the guilty verdict.

11.

{¶ 23} This court has previously stated:

> When reviewing the denial of a Crim.R. 29(A) motion, an appellate court must evaluate whether "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." *See State v. Bridgeman* (1978), 55 Ohio St.2d 261, [381 N.E.2d 184,] syllabus. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim. See *State v. Carter* (1995), 72 Ohio St.3d 545, 553, [651 N.E.2d 965, 1995-Ohio-104]." *State v. Reyes*, 6th Dist. Wood No. WD-03-059, 2005-Ohio-2100, ¶ 21.

{¶ 24} As the Supreme Court of Ohio has stated the term "sufficiency of the evidence" presents a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In evaluating a sufficiency of the evidence claim, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).

12.

{¶ 25} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b), a first degree felony.  In light of the evidence submitted at the trial below, and viewing that evidence in a light most favorable to the state, it is clear that any rational trier of fact could have found that appellant had sexual conduct with another when the other person was less than 13 years of age.  The second and third assignments of error are not well-taken.

{¶ 26} In his first assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.  Essentially, appellant contends that S. and K. were not credible witnesses.

{¶ 27} In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra,* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721 (1st Dist.1983).

{¶ 28} We have thoroughly reviewed the evidence presented at the trial below and cannot find that the jury clearly lost its way and created a manifest injustice in convicting appellant.  The testimony of both girls was consistent with statements they made to the SANE nurse during her evaluation of them.  Although K. was under 10 years old when she testified, the court conducted a competency evaluation of her and found her

13.

competent to testify.  Appellant's trial counsel did not object and appellant in his brief before this court does not challenge the trial court's finding of competency.  S. testified to incidents of vaginal intercourse, digital penetration and cunnilingus.  K. testified to incidents of vaginal intercourse, digital penetration and fellatio.  The physical exam of K. conducted by the SANE nurse revealed trauma consistent with sexual abuse.   Moreover, DNA evidence consistent with appellant's was found in S.'s underwear and vaginal swab, and there was a one in seven billion chance that seminal fluid found on S.'s bed was not from appellant.

{¶ 29} Accordingly, the conviction was not against the manifest weight of the evidence and the first assignment of error is not well-taken.

{¶ 30} Finally, in his fifth assignment of error, appellant asserts that his trial counsel was ineffective.

> To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result.  The standard proof requires appellant to satisfy a two-pronged test.  First, appellant must show that the counsel's representation fell below an objective standard of reasonableness.  Second, appellant must show a reasonable probability that, but for counsel's perceived errors, the results of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668.  See, also, *State v.*

14.

*Plassman*, 6th Dist. No. F-07-036, 2008-Ohio-3842. This burden of proof

his high given Ohio's presumption that a properly licensed attorney is

competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153. *State v. Newman*,

6th Dist. Ottawa No. OT-07-051, 2008-Ohio-5139, ¶ 27.

{¶ 31} Appellant makes one argument is support of his fifth assignment of error:

that his trial counsel was ineffective in failing to file a motion to dismiss the defective

indictment. Given that we have found no fatal flaw in the indictment in ruling on

appellant's fourth assignment of error, we similarly find no error in counsel's failure to

file a motion to dismiss the indictment. The fifth assignment of error is not well-taken.

{¶ 32} On consideration whereof, the court finds that appellant was not prejudiced

or prevented from having a fair trial and the judgment of the Huron County Court of

Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant

to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.              _____
                                              JUDGE

Arlene Singer, J.             

Stephen A. Yarbrough, P.J.              _____
CONCUR.                                      JUDGE

                                             _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.